**In re Burma Jean MARTIN.**

**Bankruptcy No. 95–42745 S.**

United States Bankruptcy Court,
E.D. Arkansas,
Little Rock Division.

April 23, 1997.

---

Keith Grayson, Little Rock, AR, for debtor.

Richard Cox, James F. Dowden, Little Rock, AR, for trustee.

---

## ORDER

MARY DAVIES SCOTT, Bankruptcy Judge.

THIS CAUSE is before the Court upon the Trustee's Motion to Compromise and Settle with Barnett Goodstein, filed on December 20, 1996, to which the debtor objected on December 30, 1997. Trial was held on April 17, 1997, at which all parties appeared. Both the trustee and debtor testified at the hearing. The trustee seeks to settle lawsuits between the debtor and Barnett Goodstein, *Goodstein & Starr, P.C, v. Martin,* No CC8810654–E and *Martin v. Goodstein,* No. 92–3900. Barnett Goodstein would release the debtor from all claims for attorneys fees, in the amount of $37,181.02, and will pay to the estate the sum of $10,500. The debtor objects on the basis that the value of her counterclaim is greater than the settlement amount.

Goodstein and Martin met in February 1985 when Martin sought Goodstein's advice regarding a foreclosure action she had instituted *pro se.*[1] They began a "personal relationship," which soon turned into a "romantic" liaison. During their romance, Goodstein performed legal work for Martin, but advised her that she would not have to pay for his services. Rather, he advised her that his office would send bills, but she should ignore them. Martin complied, and, indeed, she testified that she did not even open the envelopes containing the bills. In October 1986 Martin terminated the relationship, but did not tell Goodstein that she was in a relationship with another man. Goodstein continued to write letters to Martin, but sent no bills for legal services. In 1988, after Goodstein learned that Martin had given birth to a daughter, he filed a lawsuit against Martin for attorneys fees for services rendered during their relationship. Martin, not believing that Goodstein would pursue the litigation, did nothing, thereby permitting default to be entered. Later, the default was set aside and Martin filed a counterclaim against Goodstein for fraud and breach of fiduciary duty.

---

1. The state court judge had advised her that she needed to hire an attorney in order to proceed with the litigation.

■ In *In re Bowman*, 181 B.R. 836 (Bankr.D.Md.1995), the court stated the rule under which settlement may be approved. The court may approve the settlement unless the amount is below what is reasonable. The court should approve the settlement if

1. It provides for prompt payment to the creditors;

2. Rejection of a settlement offer may expose the trustee to lesser recovery;

3. Rejection would benefit only the debtor; and

4. Settlement is the best way to realize the asset without undue waste or needless litigation. Under the facts before the Court, three of the four elements are clearly met, and the fourth, prompt payment to the creditors, is unlikely to be realized whether or not the settlement is approved.

■ The trustee and his attorney reviewed the state court files, depositions taken in the cases, spoke with at least one of the numerous attorneys [2] who represented Martin during the litigation, and formed the opinion that settlement is in the best interest of the estate. The factors taken into account by the trustee were the nature of the suit, the deficiencies in the debtor's fraud cause of action, the lack of proof regarding damages,[3] and the debtors credibility problems [4] should the matter proceed to trial. The debtor argues that a jury should determine the amount of her damages in the fraud suit,[5] but offers no evidence as to the value of the law suit. Indeed, in response to specific ques-

tions regarding the value of the lawsuit, she merely asserted that a jury should determine the amount of her claim.

■ Settlement of the lawsuits is clearly in the best interests of the estate, because, as noted by the trustee, Martin's claim, particularly the fraud claim upon which she rests [6] her argument, is notably deficient. Martin's fraud claim is based upon Goodstein's assertion of claim for attorneys fees despite his earlier assertion that he would not charge her for the services. Martin asserts that the bills for attorneys fees, and the subsequent lawsuit to collect those fees, was fraud inasmuch as he had represented that he would not charge her for the legal services. In order to recover under fraud, the trustee would be required to prove, under Texas law,

a material misrepresentation, which was false, and which was either known to be false *when made* or was asserted without knowledge of the truth, which was intended to be acted upon, which was relied upon, and which caused injury.

*Eckmann v. Rosiers,* 940 S.W.2d 394 n. 3 (Tex.Ct.App.1997)(emphasis added). Martin's own evidence makes it clear that, at the time Goodstein made the representations to Martin they were true. He did not intend to ever assert a claim for attorneys fees. It was not until long after the representations were made, after he felt he had been spurned, that he made such a claim. Although this behavior may not be gentleman-

---

2. The testimony revealed that the debtor has, during the Goodstein state court litigation, been represented by at least seven different firms. In general, she was dissatisfied with their representation. It appears that at least one attorney found an excuse to remove her from his list of clients.

3. Her damages include:
   • $500,000 in lost income, although she has been unemployed for ten years.
   • $700,000 in mental anguish, although the debtor has been unable to find an expert to quantify those damages.
   • Lost profits for property she claims is not hers, but, rather, belongs to her parents.
   • Attorneys fees for the (at least) seven firms she has hired to pursue this litigation.

4. This Court has noted in previous opinions difficulties with the debtor's credibility. A notable example of such difficulties occurred during this

hearing. The debtor became tearful while testifying that Goodstein began sending bills after he discovered Martin had a child. When the Court halted the testimony, advising Martin to assume control of herself and that the tears were disingenuous, Martin regained composure instantaneously. She continued with her testimony and answered the next question completely in control of herself.

5. This assertion is in contrast to her previous attempts to remove the state court action to this court, where, at the time of removal, no jury trial was possible in the bankruptcy court.

6. The debtor offered no evidence regarding the remaining causes of action in the state court lawsuit in rebuttal to the trustee's testimony.

ly, it does not, under Texas law, fall within the proof requirements for fraud. Secondly, there is no evidence that he intended Martin to act in any particular manner with regard to the assertions. She had already hired him to perform legal services, and there is no evidence that he required her to continue the romantic liaison in exchange for his services.

Accordingly, the debtor has failed to establish, by any credible evidence, that the trustee would be able to effect any recovery in excess of the $10,500 offered by Goodstein as well as the elimination of his claim in this bankruptcy case. Indeed, rejection of a settlement offer would expose the trustee to lesser recovery and certainly expose the estate to undue waste or needless expense in litigating the almost decade old cause of action. It is

**ORDERED** that the Motion to Compromise and Settle with Barnett Goodstein, filed on December 20, 1996, is GRANTED and the debtor's objection, filed on December 30, 1997, is OVERRULED.

**IT IS SO ORDERED.**