# UNITED STATES BANKRUPTCY APPELLATE PANEL

## FOR THE EIGHTH CIRCUIT

---

## No. 97-6039

---

| | |
|---|---|
| In re: | * |
| | * |
| BURMA JEAN MARTIN | * |
| | * |
| Debtor. | * |
| | * |
| | * |
| BURMA JEAN MARTIN | * |
| | * |
| Appellant | * |
| | * Appeal from the United States |
| v. | * Bankruptcy Court for the |
| | * Eastern District of Arkansas |
| RICHARD L. COX, TRUSTEE | * |
| | * |
| Appellee | * |

---

Submitted: August 13, 1997
Filed: September 23, 1997

---

Before Chief Judge, KOGER, DREHER and SCHERMER

SCHERMER, United States Bankruptcy Judge:

Burma Jean Martin (the "Debtor") appeals from the

bankruptcy court's order approving a settlement of

litigation between the Debtor and Barrent Goodstein

("Goodstein").  This settlement resolved claims asserted by Goodstein against the Debtor for unpaid legal fees, as well as claims by the Debtor against Goodstein for fraud, breach of contract and other related causes of action. We affirm the order of the bankruptcy court approving the settlement.

**I**

Burma Jean Martin filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code on September 20, 1995.  At the time of the voluntary petition, the Debtor was involved in two pending state court proceedings with her former counsel and his law firm, Goodstein & Starr, P.C.  (The "Goodstein Litigation")[1].  In the first action, the Debtor defended against claims of counsel for recovery of outstanding legal fees in the amount of $37,181.02. In the second action, the Debtor as plaintiff, sought

---

[1] The Goodstein Litigation consists of the following:
1) Goodstein & Starr, P.C. v. Burma Jean Martin v. Barnett Goodstein, Cause No. CC8810654-E, County of Law No. 5, Dallas County, Texas; and
2) Burma Jean Martin v. Barnett Goodstein, Cause No. 92-3900 in the 44th District for Dallas County, Texas.

3

recovery against Goodstein on the basis of fraud and other theories stemming from an alleged promise by Goodstein that his law firm would not charge the Debtor for its legal services after the Debtor and Goodstein became romantically involved in early 1985.  Upon termination of the

romantic relationship, Goodstein began collection activity and the Debtor responded with her lawsuit.

After the Debtor filed her petition in bankruptcy, she removed the Goodstein Litigation to the bankruptcy court where the Chapter 7 Trustee, Richard L. Cox, (the "Trustee") intervened. After independent investigation, the Trustee was of the opinion that it was in the best interest of the estate to settle the Goodstein Litigation and Goodstein's claim against the estate. The record reveals that the Trustee initially reached an agreement with Goodstein, (the "Initial Settlement") whereby Goodstein would release all claims against the estate (for fees in the amount of $37,181.02) and would pay the estate $8,500.00 in full resolution of the Debtor's claims against Goodstein. Trustee provided notice of the Initial Settlement on or about May 16, 1997, but the Debtor, together with her parents, objected. The Debtor asserted that the offer of $8,500.00 was insufficient and therefore was not reasonable. Her parents contended that the claim against Goodstein had been assigned to them by the

Debtor pre-petition and therefore, the estate had no interest in the claim.

Although the parents' objection was overruled, the court did not approve the Initial Settlement, concluding that the Debtor's parents should be allowed an opportunity to bid an amount in excess of the Goodstein offer of $8,500.00. The

Trustee then issued a second Notice of Compromise Settlement, (the "Second Settlement") reciting the same offer from Goodstein and indicating that the Debtor's parents were afforded an opportunity to bid on the claim. The Debtor then filed an objection to the Second Settlement, again contesting the reasonableness of the Goodstein offer, and the Debtor's parents then bid $10,000.00 to purchase the Goodstein claim. Goodstein thereafter increased his offer to $10,500.00, and the Trustee provided notice of this, the third settlement (the "Third Settlement"). Again, the Debtor reiterated her prior objection. The court considered approval of the Third Settlement on April 17, 1997, almost a full year after the Initial Settlement had been noticed for approval and nearly ten years after the Goodstein Litigation commenced.

Debtor appeared and testified at the hearing as did the Trustee. After careful consideration of the reasonableness of the settlement in light of the evidence offered, the bankruptcy court approved the Third Settlement, finding that the compromise with

Goodstein was in the best interest of the estate. In

reaching this decision, the court considered the merits

of the Debtor's underlying fraud claim[2], as

---

[2] While the Debtor plead several causes of action in her state court lawsuit, the Debtor rested her objection to the settlement only on her cause of action for fraud and offered no evidence at the bankruptcy court on her remaining causes of action.  Thus, the bankruptcy court and this court, consider only the merits of the claim for fraud.

well as the extent to which rejection of the settlement would expose the trustee to lesser recovery and subject the estate to "undue waste or needless expense." In re Burma Jean Martin, 208 B.R. 463, 466 (Bankr. E.D. Ark.1997). Addressing the merits of the Debtor's fraud claim, the court looked to the elements of fraud under applicable Texas law and concluded that the facts offered by the Debtor could not support a finding that Goodstein made a false representation, nor that he intended the Debtor to rely upon, or take any specific action in response to, any statements or assertions he had made. Additionally, the court found that the debtor offered no evidence concerning the value of her lawsuit against Goodstein to refute the reasonableness of the Third Settlement. Accordingly, the bankruptcy court held that the Debtor failed to establish by any credible evidence, that the Trustee would be able to effect recovery in excess of the proffered settlement of $10,500.00 together with elimination of Goodstein's claims against the estate. In considering the evidence and testimony offerred, the court also

9

carefully weighed the credibility of the Trustee and the Debtor as witnesses, finding on one occasion that the Debtor's tearful presentation was disingenuous.

## II

The Debtor enumerates several issues on appeal, all of which derive from a

basic challenge to the court's conclusion that the $10,500.00 cash settlement and waiver of claims was reasonable and was in the best interest of the estate. The Debtor submits that the court failed to properly consider the Trustee's "motives" for settlement; that it failed to consider the validity of Goodstein's claim; that the court's findings of facts were clearly erroneous; and that its legal conclusions constituted an abuse of discretion.

## III

A bankruptcy appellate panel shall not set aside findings of fact unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witness. Fed.R.Bankr.P. 8013.  First Nat'l Bank of Olathe Kansas v. Pontow, 111 F.3d 604, 609 (8th Cir.1997).  "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has

11

been committed." <u>Anderson v. City of Bessemer</u>, 470

U.S. 564, 573 (1985) *(quoting* <u>U.S. v. U.S. Gypsum Co.</u>,

333 U.S. 364, 395 (1948)).   We review the legal

conclusions of the bankruptcy court <u>de novo</u>. <u>First</u>

<u>Nat'l Bank of Olathe Kansas</u>, 111 F.3d at 609; <u>Estate</u>

<u>of Sholdan v. Dietz</u>, (<u>In re Sholdan</u>), 108 F.3d 886,

888 (8th Cir.1997).   A bankruptcy court's approval of

a settlement will

not be set aside unless there is plain error or abuse of discretion. New Concept Housing, Inc. v. Arl W. Poindexter, (In re New Concept Housing, Inc.) 951 F.2d 932, 939 (8th Cir. 1991).

## IV

"The standard for compromise and approval of a settlement is whether the settlement is 'fair and equitable' and 'in the best interests of the estate.'" In re Apex Oil Company, et al., 92 B.R. 847, 867 (Bankr. E.D. Mo. 1988), *quoting*, Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424, 88 S.Ct. 1157, 1163, (1968). "The purpose of a compromise is to 'allow the trustee and creditor[s] to avoid the expenses and burdens associated with litigating sharply contested and dubious claims.'" Apex Oil Company, 92 B.R. at 866, *quoting*, United States v. Alaska Nat'l Bank, (In re Walsh Constr., Inc.) 669 F.2d 1325,1328 (9th Cir. 1982). In so doing, it is not necessary for a bankruptcy court to conclusively determine claims

subject to a compromise, nor must the court have all of the information necessary to resolve the factual dispute, for by so doing, there would be no need of settlement. New Concept Housing, Inc., 951 F.2d at 939. Neither must the court find that the settlement constitutes the best result obtainable. Rather, the court need only

canvass the issues to determine that the settlement does not fall "'below the lowest point in the range of reasonableness.'" Apex Oil Company, 92 B.R. 67, *quoting*, Cosoff v. Rodman (In re W.T. Grant Co.,), 699 F.2d 599, 608 (2d Cir.), *cert denied*, 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983). *See also*, New Concept Housing, Inc., 951 F.2d at 938. The court does not substitute its judgment for that of the trustee, but reviews the issues to see if the settlement falls below the lowest point of reasonableness. In re Bates, No. BKY4-95-4063, 1997 WL 392434 at *5 (Bankr. D. Minn. July 9, 1997). After considering all of the factors involved, the court should approve a proposed settlement only if it is "fair and equitable and in the best interests of the estate." Id. *See also*, Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424, 88 S.Ct. 1157 (1968).

In assessing the reasonableness of a settlement, the factors to be considered can be summarized as follows:

(A) the probability of success in the litigation;

(B) the difficulties, if any to be encountered in the matter of collection;

(C) the complexity of the litigation involved, ad the expense, inconvenience and delay necessarily attending it; and

(D) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

Id., *quoting*, Drexel v. Loomis, 35 F.2d 800, 806 (8th Cir. 1929). *Accord*, In re

<u>Bowman</u>, 181 B.R. 836, 843 (Bankr. D. Md. 1995).

## V

In the instant case, the bankruptcy judge brought to the final settlement hearing, a long history of experience in dealing with the Goodstein litigation. Indeed, the notice of settlement of these matters had been served on three occasions with hearings and appearances by the Debtor in opposition to each announced settlement. Additionally, the Debtor petitioned the bankruptcy court for removal of the Goodstein litigation when her Chapter 7 petition was filed and then, again, sought to remove the litigation from the court by her attempted conversion to Chapter 13. In each of the foregoing instances, the bankruptcy judge had the opportunity to assess the relevant facts underlying the Goodstein litigation, as well as an opportunity to assess the credibility of the witnesses.

The bankruptcy court, after a full evidentiary hearing, made an independent determination of the merits of the Debtor's claims against Goodstein,

finding that under Texas law, the Debtor's claims against Goodstein were "notably deficient." The record also reflects that the court considered the appropriateness of the amount of the proposed settlement in light of the release of Goodstein's claims against the estate, as well as the expenses and inconvenience of continued litigation in this already protracted and aging law suit. While the Debtor challenges the sufficiency

18

of the value of the settlement to the estate, she offered no evidence concerning the value of her claims against Goodstein.  Moreover, the Debtor' efforts through her parents to bid $10,000.00 for purchase of the claims against Goodstein supports rather than contradicts the reasonableness of the Third Settlement.

Finally, the Debtor contests the court's  failure to consider the Trustee's "motive" in settling the Goodstein litigation.  The record reflects that the court properly considered the correct legal standard in evaluating the Third Settlement, and allegations of the Trustee's alleged "ill motive" remain unsupported.

In this proceeding, the bankruptcy court was sufficiently informed of the facts and employed the appropriate legal analysis in reaching its determination that the proposed settlement was reasonable.

Accordingly, the decision of the bankruptcy court is affirmed.

A true copy.

19

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL FOR THE EIGHTH CIRCUIT