In re Betty Darlean MOHR, Debtor.

Fredrich J. CRUSE, Chapter
7 Trustee, Plaintiff,

v.

Betty Darlean MOHR and Wendel
Bourgeois, Defendants.

Bankruptcy No. 97–20438–293.
Adversary Nos. 97–2852–293, 97–2853–293.

United States Bankruptcy Court,
E.D. Missouri,
Northern Division.

April 3, 1998.

Vicki A. Dempsey, Hannibal, MO, for Debtor.

Fredrich J. Cruse, Hannibal, MO, Chapter 7 Trustee.

Charles E. "Sketch" Rendlen III, Rendlen Law Firm, Hannibal, MO, for Trustee.

Dennis Dow, Kansas City, MO, Robert Clayton III, Hannibal, MO, for Equitable Life Assurance Society of United States.

Joseph D. Welch, Ely, Cary, Welch & Hickman, Hannibal, MO, for Wendel Bourgeois.

Office of the United States Trustee, St. Louis.

### MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

#### JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 9.01 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" pursuant to 28 U.S.C. §§ 157(b)(2)(A),(B),(K) and (O), which the Court may hear and determine.

#### PROCEDURAL BACKGROUND

1. Debtor, Betty Darlean Mohr, filed a petition seeking relief under Chapter 7 of the Bankruptcy Code (11 U.S.C. §§ 101–1330) on October 16, 1997. Among the assets Debtor listed on her schedules was 198 acres of land (Property) located in Lincoln County, Missouri with a value of $268,000.00 and secured claims against it totaling $78,611.00. In the Schedule G Debtor filed with her Petition she indicated that, in 1991, she (as lessor) and Wendel Bourgeois (as lessee) executed a "Lease to own" 200 acres of real property (Lease). A copy of the Lease was attached to the filing and will be discussed more thoroughly in the Factual Background portion of this Memorandum Opinion.

2. Fredrich J. Cruse, Trustee, filed a Motion to Reject Lease (designated Motion 6 by the Court) on November 17, 1997. The Trustee sought to reject the Lease between Debtor and Bourgeois because, he alleged, it created a cloud on the title to the Property and, therefore, hindered his ability to create an estate for Mohr's unsecured creditors. In his Motion to Reject Lease, Trustee recognized that Bourgeois also holds an Irrevocable Option to Purchase (Option) the land subject to the Lease. Trustee, however, maintained the Option was independent of the Lease and, therefore, irrelevant to the issue of lease rejection.

3. On November 26, 1997, Bourgeois filed an Objection to Trustee's Motion to Reject Lease. Bourgeois maintained that under the Lease, he holds an estate in land of which Trustee cannot divest him. Similarly, Bourgeois argued that, under the Option, he holds an estate in land of which Trustee cannot divest him. Bourgeois also asserted that Trustee was bound by the terms of the Option and that upon tender of the Option price, Trustee would be obligated to deliver him title to the Property. Lastly, Bourgeois asserted that the Property had appreciated since he purchased the Option. Because Trustee's allegations had harmed him, Bourgeois sought damages of $100,000.00 from Trustee.

4. Also on November 17, 1997, Trustee filed a Complaint For Preliminary Injunction With Motion For Temporary Restraining Order. The Court assigned the adversary case number 97–2852–293 to this proceeding. In his Complaint For Preliminary Injunction With Motion For Temporary Restraining Order, Trustee alleged that Debtor had attempted to renegotiate the payment terms of the Lease so that payments would be made to Bourgeois every month, instead of annually as provided in the Lease. Trustee argued that the Lease was property of the estate and that immediate and irreparable harm

would occur to the estate if Debtor or her attorney renegotiated the lease's payment terms.

5. On November 24, 1997, the Court granted Trustee's request for a Temporary Restraining Order barring Debtor or her attorney from renegotiating the payment terms of the Lease. Trial of Trustee's Complaint, to the extent that it sought a Permanent Injunction, was set for January 26, 1998. The Trial was continued indefinitely pending the Court's decision on a settlement Trustee and Bourgeois reached. That settlement is more fully discussed below.

6. On December 17, 1997, Trustee commenced a second adversary proceeding by filing a Complaint To Determine Trustee's Interest In Real Estate. The Court numbered this proceeding 97–2853–293. Trustee alleged that Debtor and Bourgeois had entered into the Lease and that the Lease appears to pay Debtor no more than fair market value for the use of the Property. Trustee further alleged that the Option Debtor granted to Bourgeois creates a cloud on the Property's title because it conflicts with the Lease. Trustee also alleged that the property subject to the Option had been valued at $265,000.00 in a Chapter 12 Bankruptcy Debtor and her now-deceased husband previously filed, and because the consideration Bourgeois exchanged for the Option was inadequate, Trustee could void the granting of the Option. Trustee also acknowledged the existence of secured claims against the leased and optioned Property and asked the Court to determine the extent of those liens. In conclusion, Trustee stated his belief that Debtor's interest in the property subject to the Lease "is sufficient to pay all scheduled unsecured creditors in full with interest and allow funds for the Debtor."

7. On January 8, 1998, Bourgeois filed an Answer to Trustee's Complaint to Determine Trustee's Interest in Real Estate. Bourgeois admitted entering into the Lease and Option, but denied that the payments under the Lease were for no more than the land's fair rental value. Bourgeois also denied Trustee's allegation that insufficient consideration was given for the Option, and that Trustee,

therefore, could void the granting of the Option. Bourgeois also denied that the Option conflicted with the Lease to create a cloud on the Property's title and that Debtor's interest in the real estate exceeded the amount necessary to pay all her unsecured creditors in full.

8. Equitable Life Assurance Society of the United States (Equitable) filed an answer to Trustee's Complaint to Determine Trustee's Interest in Real Estate on January 30, 1998. Equitable alleged that through the Plan in the Chapter 12 bankruptcy Debtor previously filed, it held two secured claims against the Property it maintained Debtor had sold to Bourgeois. Equitable argued that the execution of the Lease and Option effected a sale of the property securing its claim. In further answer, Equitable alleged that under section 506(b) of the Bankruptcy Code, its attorney's fees and expenses are secured by the value of the leased and optioned property in excess of the amount of the secured claims against that property.

9. On February 5, 1998, Trustee filed a Notice of Hearing on Trustee's Motion For Approval of Compromise and Settlement (Motion 13). In the Notice, Trustee described a settlement he had reached with Bourgeois resolving the estate's allegations concerning the Lease and Option. Under the terms of the proposed Settlement,

a. Bourgeois would pay $10,000.00 to the estate, representing the present value of Debtor's interest in the payments he had not yet made under the Lease,

b. Bourgeois would pay $71,000.00 to Trustee to satisfy what Trustee and Bourgeois maintained was the extent of Equitable's secured interest in the property subject to the Lease and Option (Trustee would pay Equitable this sum before April 15, 1998),

c. Trustee would convey the Property (currently subject to the Lease and Option) to Bourgeois in fee simple absolute.

The proposed Settlement was conditioned upon the Court finding that Equitable's "allowed secured claim" was less than or equal to $80,000.00.

10. On February 18, 1998, Trustee and Bourgeois filed a Joint Motion to Establish Amount Due Equitable For Its Allowed Secured Claim and To Establish Procedure For Tender (Motion 14). The Joint Motion asked the Court to determine the extent of Equitable's interest in the property subject to the Lease, Option and Settlement. The Joint Motion recited that on April 15, 1998, Equitable would be owed a balloon payment on its mortgage against the Property and that a failure to make this payment would adversely affect Bourgeois's Option to Purchase. The Joint Motion also asked the Court to order Equitable to provide Trustee with the amount that Trustee will have to tender under the Settlement to satisfy Equitable's secured claim, including attorney's fees.

11. Equitable filed a Response and Objection to Trustee's Motion For Approval of Compromise and Settlement. Equitable objected to the proposed Settlement because:

    a. it does not adequately protect Equitable's interest; and

    b. the sale of Property contemplated in the Settlement does not comply with section 363(f) of the Bankruptcy Code.

In support of its contention that the Settlement does not adequately protect its interest, Equitable reasserts its argument that the Property secures, not only the $71,000.00 debt the Settlement proposes paying to Equitable, but another claim that became secured by the Property when, as Equitable maintains, Debtor sold the Property to Bourgeois. Because the proposed Settlement does not pay this additional claim, Equitable concludes that the Settlement does not adequately protect its interest.

12. On February 23, 1998, the Court held a hearing to consider: Trustee's Complaint to Determine Trustee's Interest in Real Estate; Motion to Reject Lease (Motion 6); Trustee's Complaint for a Permanent Injunction (Adv. No. 97–2852–293); Trustee's Complaint To Determine Trustee's Interest In Real Estate (Adv. No. 97–2853–293); Trustee's Motion For Approval of Compromise and Settlement (Motion 13); and the Joint Motion to Establish Amount Due Equitable For Its Allowed Secured Claim and To Establish Procedure For Tender (Motion 14).

## FACTUAL BACKGROUND

Upon consideration of the testimony, evidence and argument of counsel, the Court makes the following findings of fact:

1. In 1987, Debtor and her husband filed a petition for relief under Chapter 12 of the Bankruptcy Code.

2. When the Mohrs filed their Chapter 12 petition, Equitable held a claim for $232,-139.72 against them that was partially secured by a lien on 386 acres of their land.[1] Equitable's claim was based upon a promissory note and a deed of trust, each of which was dated May 1, 1979.

3. The Mohrs proposed a Chapter 12 plan of reorganization (Plan) that treated Equitable's claim in three ways.

First, the Mohrs transferred 187 acres of land to Equitable in exchange for an $87,-000.00 reduction in Equitable's $232,139.72 claim.

Second, Equitable was recognized as having "an allowed secured claim in the sum of $98,000.00. The claim is secured by a tract of land consisting of approximately 200 acres." The land securing the $98,000.00 claim is the land that was ultimately the subject of the Lease and Option each of which have been referred to above and each of which will be described below. The Plan provided that, on April 15, 1988, the Mohrs would pay Equitable interest from January 1, 1988 to April 15, 1988 at a rate of 10 percent based upon a principal of $98,000.00. The Mohrs also would pay Equitable 3 percent of the $98,000.00 principal amount ($2,940.00) on April 15, 1988. Then, the Plan provided, the Mohrs would repay the remaining 97 percent of the $98,000.00 ($95,060.00) principal on a twenty-year amortization schedule, interest at a rate of 10 percent a year. The repayment schedule contemplated the Mohrs making annual payments to Equitable due every April 15 through 1998 when a balloon

---

1. At one point in the Chapter 12 Plan, it is stated that Equitable's claim is secured by a lien against 377 acres and at another point it is stated that Equitable's claim is secured by a lien against 386 acres. The Deed of Trust, however, states that it covers 386 acres. .

payment of the balance would come due. At the February 23, 1998 hearing, the parties agreed that the balance owed on Equitable's "allowed secured claim". was $65,327.22 plus interest at a rate of 10 percent since April 16, 1997.

Third, the Plan treated the remaining balance of Equitable's prepetition claim as unsecured. Over the life of the Plan, Equitable was to be paid 33.7 percent of its unsecured claim. A contingency in the Plan, however, provided that "in the event of a sale or refinancing by the debtors of the real property securing Equitable's [allowed secured] claim on or before April 15, 1998, or in the event of a default by the debtors in any payment due Equitable on or before such date, the lien of Equitable on the real property [that secures Equitable's allowed secured claim] shall secure the entire balance due on Equitable's unsecured claim." At the February 23, 1998 hearing, the parties agreed that the balance not paid on Equitable's "unsecured" claim under Plan was $43,433.88.

4. The Court confirmed the Mohrs' Chapter 12 Plan on January 27, 1988.

5. On January 16, 1991, Debtor leased the Property that, under the Chapter 12 Plan secured Equitable's allowed secured claim, to Bourgeois for a term of fifteen years. The Court has referred to this lease above as "Lease." The Lease provides that Bourgeois will pay $24,811.78 a year to Kahoka State Bank (KSB) beginning on April 1, 1992 and ending on April 15, 2006. From the payments it receives from Bourgeois, KSB is to pay the amount owed to each of the three creditors, namely, Equitable, Commerce–Allegiant National Bank (Commerce), and Farmers Home Administration (FmHA) who held claims secured by the leased property when the Lease was executed. Debtor testified that the $24,811.78 lease payment was determined by totaling the annual payments she owed to Equitable, Commerce, and FmHA and adding to that sum the approximately $2,300.00 of tax liability Debtor would incur by recognizing the lease payments as income.

The Lease also provides that Bourgeois, as additional rent, will pay the real estate taxes for the Property and carry casualty or liability insurance on it. Debtor can cancel the Lease only if Bourgeois fails to make a lease payment. Upon 90 days written notice, Bourgeois may cancel the Lease at any anniversary of its execution.

7. On the same day they executed the Lease, January 16, 1991, Debtor and Bourgeois executed an Irrevocable Purchase Option Agreement. This agreement is the Option to which the Court has previously referred. Under the terms of the Option, Debtor granted Bourgeois the option to purchase, for $500.00, the Property securing Equitable's allowed secured claim. The Option can be exercised only between April 15, 2006 and May 1, 2006. To purchase the Option, Bourgeois paid Debtor $500.00 on January 16, 1991 and an additional $49,000.00 on April 16, 1991.

8. In 1991, Bourgeois paid Commerce the balance owed on its deed of trust. Bourgeois testified that he and Debtor orally agreed to modify the Lease to reduce his annual payment by the amount due to Commerce each year, namely, $8,865.51. After the reduction in payments, Bourgeois's annual rent owed under the Lease became $15,946.27.[2]

9. Canceled checks admitted into evidence and the testimony elicited to explain them demonstrate that, as of the date of the hearing, Bourgeois had paid approximately $235,005.14 under the terms of the Lease and Option.

## DISCUSSION

The resolution of the various motions and adversary proceedings noted in the caption of this case is controlled by the Court's determination of whether the $43,433.88 "unsecured" claim Equitable received under the Chapter 12 Plan is secured or unsecured by the Property which is subject to the Lease, Option and, now, the Settlement (Property). The Trustee, Bourgeois and Equitable each asserted their positions on this issue at the February 23, 1998 hearing.

---

2. The Court observes that the $2,313.83 Debtor received under the Lease, purportedly to pay the

income tax liability she incurred by recognizing the Lease payments as income, was not reduced.

Equitable asserted two similar arguments in support of its position that the $43,433.88 "unsecured" claim became secured under the terms of the Chapter 12 Plan when Bourgeois and Debtor executed the Lease and Option. First, Equitable argued that the simultaneous execution of the Lease and Option constituted a contract for deed. Equitable referred the Court to *Long v. Smith*, 776 S.W.2d 409, 413 (Mo.App.1989), which describes the attributes of a contract for deed. Equitable then asked the Court to adopt the reasoning of *Capitol Federal Savings and Loan Assoc. v. Glenwood Manor, Inc.*, 235 Kan. 935, 686 P.2d 853 (1984), and find that the execution of a contract for deed triggers a "due on sale clause" like that in the Chapter 12 Plan which causes Equitable's $43,-433.88 "unsecured" interest to become secured upon the sale or refinancing of the Property, or upon the Mohr's default of payments under the Plan. Equitable further maintained that the Property secured, not only its $43,433.88 claim, but also the attorney's fees it has incurred in protecting this interest.

Second, Equitable argued that the simultaneous execution of the Lease and Option was a disguised sale of the Property. Equitable asked the Court to look through the form of the Lease and Option and recognize that Debtor and Bourgeois effected a sale of the Property when they executed the Lease and Option. Equitable maintained that the disguised sale triggered the clause in the Chapter 12 Plan causing its $43,433.88 "unsecured" claim to become secured by the Property. Again, Equitable also argued that the Property secured, not only its $43,433.88 claim, but also the attorney's fees it has incurred in protecting this interest.

The Trustee and Bourgeois rejected Equitable's theory that the Chapter 12 Plan's "due on sale" clause was triggered when Debtor and Bourgeois executed the Lease and the Option. Trustee and Bourgeois also rejected the argument that the Lease and Option effected a disguised sale of the Property. Bourgeois testified that there were circumstances under which he would not exercise the Option and his counsel emphasized, that unlike a sale, Bourgeois was not obligated to own the Property under the terms of the Lease and Option. Trustee and Bourgeois maintained that the Lease and Option are legitimate methods of conveying property interests in Missouri and do not merge together to effect a sale of the Property. Trustee and Bourgeois also argued that, even if the Lease and Option are considered to be a contract for deed, the Chapter 12 provision providing for the "resecuring" of Equitable's $43,433.88 claim was not triggered so and that claim remains unsecured. They maintained that the Chapter 12 Plan's "due on sale" clause, which refers only to a sale of the Property, is too narrow to be triggered by Debtor entering into a contract for deed.

■ The Court agrees with the Trustee and Bourgeois that Debtor did not sell the Property to Bourgeois. The Court rejects both of Equitable's arguments and finds that the Lease and Option did not effect either a disguised sale or a contract for deed. The Lease and Option are legitimate tools through which interests in real property are conveyed. The fact that an entity leases a piece of property and also purchases an option to purchase that same property does not mean that it has purchased that property. The trial testimony demonstrated significant differences between the interest held by a leaseholder who also possesses an option to purchase the leased property, and a purchaser who holds clear title to property. Among those differences are that a holder of a lease and option cannot be sued to exercise his option, in contrast, a purchaser who executes a deed of sale or contract for deed may be sued to specifically perform the contract. Another difference is that the holder of a lease and option, unlike one who holds legal or equitable title to property, does not possess an interest that can be insured by a title insurance company.

Because the Court has concluded that Equitable's $43,433.88 interest is not secured, the attorney's fees expended attempting to prove that the $43,433.88 interest was secured are not secured by the Property.

■ This Court should approve a settlement when it is fair, equitable and in the best interests of the estate. *Martin v. Cox (In re*

*Martin),* 212 B.R. 316, 318 (8th Cir. BAP 1997). It is not necessary for approval, that a settlement be the best result possible for the estate. *Id.* The Settlement Trustee and Bourgeois have reached provides that Trustee will convey full title to the Property to Bourgeois in exchange for $10,000.00. Although the Debtor valued the Property at $268,000.00 in 1991, she leased that Property and conveyed an irrevocable option to purchase that land. When she filed her petition, Debtor's only interests in the Property were:

1. the right to receive approximately $2,300.00 a year under the lease through the year 2006; and

2. the right to own the Property after May 1, 2006 if Bourgeois decides not to exercise the Option; or

3. the right to receive $500.00 sometime between April 16, 2006 and May 1, 2006 if Bourgeois exercises his Option.

In essence, the Settlement, from the estate's point of view, consolidates the stream of rent payments and the $500.00 option purchase price into a lump sum payable on or before April 15, 1998. Notice of the proposed Settlement was sent to all of Debtor's creditors, and none of them objected to its fairness. Considering all the facts and circumstances, the Court finds that the Settlement is reasonable and should be approved.

At the February 23, 1998 hearing, Equitable argued that the Settlement really proposed a sale per section 363(f) of the Bankruptcy Code and objected to it on the ground that its interests were not adequately protected. Equitable's argument that its interest in the Property was not adequately protected, however, was premised upon its contention that the Property secured the $43,433.88 claim it was granted in the Chapter 12 Plan. Because the Court has concluded that the $43,433.88 claim Equitable received in the Chapter 12 Plan is not secured by the Property, there is no interest secured by the Property that is neither satisfied through the Settlement (Equitable's "allowed secured claim") or assumed by Bourgeois (the obligation to FmHA). Therefore, section 363(f) has no application to the transaction contemplated by the Settlement because the Property is not being sold free and clear of an interest.

 As the Court has recounted above, Equitable also argued that its $43,433.88 claim, if not secured by the Property, is at least an unsecured claim against Debtor's Chapter 7 estate. The Court disagrees. The Chapter 12 Plan provided that, subject to the "due on sale" condition, Equitable's $43,433.88 claim would be treated as an unsecured claim and be paid approximately 33 percent of its value. Equitable did not argue that the Chapter 12 Plan was not fulfilled and a search of the Court's records indicates that the Mohrs were granted a discharge on September 16, 1991. Equitable's unsecured claim for $43,433.88, to the extent that it was not paid through the Plan was discharged and cannot now be asserted as an unsecured claim against Debtor's Chapter 7 estate.