**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1915
_____

IN RE:  NOVAPRO HOLDINGS, LLC; NOVAPRO RISK SOLUTIONS, LP;
NOVAPRO RISK SOLUTIONS, LP, LLC; NOVAPRO RISK SOLUTIONS, GP, LLC
et al.,

Debtors

------------------------------

CHARLES A. STANZIALE, JR., Trustee

v.

U.S. RISK INSURANCE GROUP, INC.; ISLLC INVESTMENTS, INC., a/k/a ILSSC
Investments, Inc.; RANDALL G. GROSS; JOHN DOES I-X, NEBO VENTURES, LLC,

Appellants

_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civ. No. 18-CV-00766)
District Judge: Honorable Richard G. Andrews
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
July 2, 2020
_____

Before: GREENAWAY, JR., SHWARTZ and RENDELL, Circuit Judges.

(Filed: July 23, 2020)

_____

OPINION*
_____

SHWARTZ, Circuit Judge.

Nebo Ventures, a creditor of Debtors NovaPro Risk Solutions, LP and its associates, appeals an order approving the settlement of an adversary proceeding that NovaPro (by its Trustee) brought against its former owners and executives. Because the Bankruptcy Court's evaluation of the settlement was sound and approval of the settlement was within its discretion, we will affirm.

I

Debtors filed for bankruptcy protection under Chapter 7 of the Bankruptcy Code, and a Trustee was appointed to manage the estate. At the time of the petition, the Debtors had over $1 million in liabilities and their only asset was $1.98 in cash. The Debtors had fewer than ten creditors, the largest of which was Nebo.[1]

The Trustee learned of prepetition transfers to U.S. Risk, ISLLC Investments, Inc., and Randall G. Goss, the Debtors' chief executive officer and board chairman (together, the "Defendants").[2] The Trustee obtained documents from the Defendants, the Debtors' banks, their accountants, and other third parties.

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.
[1] Nebo was a creditor as a result of a $1.4 million state court judgment it obtained against NovaPro in a prepetition lawsuit. Other large creditors included Russell Whitmarsh, a former officer of the Debtors, and U.S. Risk Insurance Group.
[2] The Defendants together owned nearly 100% of the Debtors.

2

Thereafter, the Trustee filed an adversary proceeding against the Defendants to recover assets and prevent further transfers. The Trustee asserted claims including unjust enrichment, avoidance of claims, alter ego, and breach of fiduciary duty, and contended that four categories of transfers were subject to avoidance: (1) a claim "for approximately $1.7 million related to an intercompany transfer"; (2) an over $1 million equity earnout; (3) a "management agreement obligation" of $660,000; and (4) an "alleged false management transfer in the amount of [$120,000]." App 359.

The Defendants moved to dismiss. Before the motion was decided, the Trustee and Defendants participated in mediation. Prior to mediation, the Trustee retained a financial advisor to evaluate documents and determine if there had been any "actual and constructive fraudulent transfers."[3] App. 325. The mediation did not result in a settlement, but the Trustee considered what he learned about the parties' positions, including the defenses and the Debtors' arguable solvency at the time of the transfers,[4] and eventually reached a settlement with Defendants. Under the settlement, Defendants agreed to pay the Trustee $300,000 and withdraw, waive, and release all claims. The Trustee also arranged for the Debtors' law firm and financial advisor to waive fees

---

[3] This evaluation included review of the Debtors' general ledger, bank statements, tax returns, sale documentation, and reports prepared by outside consultants as well as documents from U.S. Risk Insurance Group and other third parties received either through informal document requests or produced pursuant to subpoena. The financial advisor also reviewed declarations from Whitmarsh and documents from the Nebo litigation.

[4] Before engaging in settlement talks, the Trustee offered Nebo the option to purchase, pursue, or provide funding for the adversary proceeding. Nebo declined.

totaling $225,000.  As result of the settlement, unsecured creditors, including Nebo, would receive a 10% distribution.

The Trustee moved for approval of the settlement in the Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 9019.  Nebo objected to the settlement,[5] arguing that the Trustee's investigation was insufficient and that the Trustee should pursue formal discovery.

The Bankruptcy Court held a hearing at which the Trustee and his financial advisor testified.  The Trustee testified that the settlement was proper because: (1) "this matter includes very complex legal arguments and accounting issues with valid defenses," App. 363; and (2) the estate was administratively insolvent.  The Trustee's financial adviser also testified that (1) based on his financial analysis, there would be "substantial hurdle[s]" to proving the adversary claims, App. 408-10; (2) the Defendants presented arguments and defenses that "significantly reduce[d] the likelihood of a favorable outcome of the Trustee's claim," App. 1081, and (3) pursing litigation would demand significant expenses and delay, and that "it is very unlikely that any potential benefits of a further litigation would offset the cost of the Adversary Proceedings," App. 1085.

Following the hearing, the Bankruptcy Court approved the settlement, finding that: (1) the Trustee showed that the "settlement amount is above the lowest point in the range

---

[5] Whitmarsh joined in Nebo's objection.  Nebo and Whitmarsh represented 99.9% of the unsecured creditors.

of reasonable litigation outcomes," App. 1208; (2) while there "is some merit to Nebo Ventures' argument that the Trustee provided little evidence about the merits of [certain] claims," App. 1204, Nebo had the opportunity to establish their viability but did not do so; (3) in any event, "the litigation" faced "credible obstacles . . . , including defenses such as reasonably equivalent value and solvency," App. 1203; (4) while "formal discovery" may have "dispel[led] concerns about the reliability of the information exchanged between the Trustee, his counsel, and Defendants," this concern did not warrant rejecting the settlement, App. 1203, particularly since the financial advisor reviewed information from Defendants and "multiple third-party sources" and "there [was] no evidence that the financial advisor's review of those documents was flawed," App. 1203; (5) although no party "raised concerns about collection," App. 1205, continuing with the "litigation and the expense, inconvenience and delay necessarily attending it[,] weigh[ed] in favor of approving the settlement," App. 1206; and (6) "the settlement serves the paramount interest of creditors" because it "provides [] a modest recovery," and waives significant claims and fees on the estate, as well as "eliminates the chance of an adverse outcome at trial," App. 1207.

Nebo appealed, and the District Court affirmed the Bankruptcy Court. This appeal followed.

## II[6]

---

[6] The District Court had jurisdiction over the bankruptcy appeal under 28 U.S.C. § 158(a)(1). We have jurisdiction under 28 U.S.C. §§ 158(d)(1) and 1291. We apply the same standard as the District Court and review the approval of a settlement for an abuse

5

Under Federal Rule of Bankruptcy Procedure 9019, a bankruptcy court has the authority to "approve a compromise or settlement" of a claim after notice to the debtor, trustee and creditors and a hearing on the compromise. Fed. R. Bankr. P. 9019(a). The bankruptcy court must decide whether the settlement is "fair and equitable," In re Nutraquest, Inc., 434 F.3d 639, 644 (3d Cir. 2006) (citation omitted), and "assess and balance the value of the claim that is being compromised against the value to the estate . . . accept[ing] . . . the compromise" by considering: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors," In re Martin, 91 F.3d 389, 393 (3d Cir. 1996).

The Bankruptcy Court balanced the value of the claim against the value to the estate of the settlement of that claim, considered the Martin factors, and reasonably concluded that the settlement was fair and equitable. The Court correctly found that any probability of success was complicated by numerous credible defenses raised by Defendants and noted by the Trustee's financial advisor. The Trustee and his financial advisor both concluded it would be difficult to prove that the Debtors were insolvent at the time of the equity transfer underlying one claim and that the transfer of $1.7 million

---

of discretion. In re Nutraquest, Inc., 434 F.3d 639, 644 (3d Cir. 2006) "[F]or us to find an abuse of discretion the District Court's decision must rest on a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." Id. at 645 (internal quotation marks and citation omitted).

was the repayment of a loan for operational expenses and hence was not fraudulent. The Trustee also testified that he was aware of no actual fraud and the financial advisor testified that, during the mediation, Defendants told the financial advisor that they could show that the transfers were reasonable and not fraudulent. Thus, the Court had a sufficient basis to conclude that the probability of success in the litigation was low.

Nebo asserts that the Bankruptcy Court failed to adequately evaluate all of the claims. The Bankruptcy Court need not probe the merits of all claims or conduct a "mini-trial" before approving the settlement; rather, avoiding litigating the issues is one of the main advantages of settlement. In re Key3Media Grp., Inc., 336 B.R. 87, 92-93 (Bankr. D. Del. 2005); see also Depoister v. Mary M. Holloway Found., 36 F.3d 582, 586-87 (7th Cir. 1994); In re Martin, 212 B.R. 316, 319 (B.A.P. 8th Cir. 1997) (noting it is "not necessary for a bankruptcy court to conclusively determine claims subject to a compromise, nor must the court have all of the information necessary to resolve the factual dispute, for by so doing, there would be no need of settlement"); In re Capmark Fin. Grp. Inc., 438 B.R. 471, 515 (Bankr. D. Del. 2010) (holding that rather than deciding "questions of law or fact raised by litigation," courts "should canvas the issues to determine whether the settlement falls above the lowest point in the range of reasonableness"). Moreover, the Court did not rely on Trustee's "bald assertions" about the claims, Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson, 390 U.S. 414, 439 (1968) ("TMT Trailer Ferry"), but rather considered the Trustee's testimony alongside the financial advisor's robust analysis to determine whether the

7

claims were worth pursuing. Thus, it was reasonable for the Court to give some deference to the Trustee's judgment. Martin, 91 F.3d at 395 (noting that normally courts "defer to the trustee's judgment as long as there is a legitimate business justification" (citation omitted)); see also Key3Media Grp., 336 B.R. at 93 ("defer[ring] to a Debtors' [sic] business judgment in deciding whether to settle a matter" where court is persuaded that "the compromise is fair and equitable"). Furthermore, although the Court noted Nebo's argument that the Trustee "provided little evidence about the merits of [certain] claims," App. 1204, Nebo did not seize the opportunity to establish their viability.

Nebo also contends that the Trustee accepted the settlement without adequate discovery. However, while formal discovery was not conducted, the Trustee, his counsel, and his financial advisor obtained documents from the Debtors, the Defendants, and third-parties and received responses to subpoenas under oath. These documents included bank statements, balance sheets, income statements, general ledgers, tax returns, and court records. From these documents, the financial advisor was able to conduct a solvency analysis and from it could identify deficiencies in the Trustee's claims. App. 404.

The Court also considered evidence that continuing this complex litigation would be expensive and time consuming and received evidence about the collectability of the judgment should one be obtained. Therefore, the Court had a basis to conclude that the settlement made economic sense.

8

Finally, the Bankruptcy Court had a basis to conclude that the settlement was in the creditors' interest. The Court heard evidence that the settlement would yield a 10% recovery, despite the estate's administrative insolvency, and "eliminate[d] . . . [the] chance of an adverse outcome at trial." App. 1207.

Because "the record contain[s] adequate facts to support the decision" to approve the settlement, TMT Trailer Ferry, 390 U.S. at 437, we will not disturb the Bankruptcy Court's ruling.[7]

IV

For the foregoing reasons, we will affirm the District Court's order affirming the order of the Bankruptcy Court approving the Settlement.

---

[7] Nebo also challenges the Debtors' credibility by pointing out examples of dishonesty on the part of the Debtors in their prepetition litigation. The Bankruptcy Court acknowledged Nebo's credibility arguments, but found that they did not undercut approval of the settlement. The weight to be given to Nebo's argument was within the Court's discretion. See TMT Trailer Ferry, 390 U.S. at 445 (noting "much weight must be given to the long familiarity of the District Judge with the debtor and to his evaluation of the witnesses who testified in his presence"); In re Spectrum Arena, Inc., 462 F.2d 156, 160 (3d Cir. 1972) (noting "we give due regard to the [District] [J]udge's assessment of . . . credibility").

9