Eckmann 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-96-00337-CV







Madeleine Eckmann and Douglas Eckmann, Appellants



v.



Joseph Des Rosiers, M.D., and Des Rosiers and Wernecke & Associates, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT


NO. 95-13491, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING







 Madeleine Eckmann and her husband Douglas Eckmann sued Joseph Des Rosiers, M.D.,
and "Des Rosiers & Wernecke, a partnership," for personal injuries allegedly caused Mrs. Eckmann by
Des Rosiers's negligence. The Eckmanns appeal from a summary judgment that they take nothing. We
will affirm the judgment.



THE CONTROVERSY


 In surgery performed September 25, 1993, Des Rosiers removed Mrs. Eckmann's uterus
and ovaries. She was allegedly unable to tolerate the subsequent hormone-replacement therapy
necessitated by removal of her ovaries. As a result, she allegedly suffered "rapid skin aging, bone
deterioration, painful joints, and other dramatic hormone-related changes in her mood and body," a failure
to enjoy a normal sex life, and associated pain and mental anguish that in reasonable probability will
continue in the future. She sued Des Rosiers and "the partnership of Drs. Des Rosiers and Wernecke" for
compensatory and punitive damages after furnishing them the antecedent written notice required for "a
health care liability claim" by the Medical Liability and Insurance Improvement Act (the Act). See Tex.
Rev. Civ. Stat. Ann. art. 4590i (a)-(d) (West Supp. 1997).

 Des Rosiers and Des Rosiers and Wernecke & Associates appeared. In an amended
original answer they pleaded a general denial, a verified denial that Des Rosiers and Wernecke &
Associates was a partnership, a plea that it was a professional corporation, and a defense that the claim
against the corporation was barred by the two-year statute of limitations set out in the Texas Civil Practice
and Remedies Code, section 16.003. See Tex. Civ. Prac. & Rem. Code Ann. § 16.003 (West 1986).

 The trial court sustained motions for summary judgment in favor of Des Rosiers and Des
Rosiers and Wernecke & Associates, finding as a matter of law that the latter was not a partnership but
a corporation of which Des Rosiers was an employee and that any cause of action against the corporation
was barred by limitations. On appeal, the Eckmanns do not complain of the judgment in favor of the
corporation and we need not discuss further that aspect of the case. The Eckmanns' appellate complaints
are set out below. (1)



CAUSES OF ACTION FOR MISREPRESENTATION


 The Eckmanns complain that the summary judgment record did not defeat as a matter of
law their causes of action for negligent and fraudulent misrepresentation, allegedly made by Des Rosiers
in the course of diagnosis and treatment. Des Rosiers rejoins that the Eckmanns' original petition, fairly
read, did not allege such causes of action. We agree.

 Paragraphs I-VII of the petition allege facts pertaining to Mrs. Eckmann's visits with Des
Rosiers before the operation, the findings and opinions inferred from his examinations, and his
recommendation that the ovaries as well as the uterus be removed. Included were his opinions that she
would be better off having the ovaries removed because of her age and the risk of cancer and that their
removal would not affect her sex life. He allegedly did not, however, advise her that she would require
hormone-replacement therapy. Paragraph VIII alleges that in reliance on the information provided by Des
Rosiers, Mrs. Eckmann agreed to the surgery and Dr. Des Rosiers removed her uterus and ovaries. 
Paragraph IX of the petition alleges that Des Rosiers was negligent and grossly negligent in several
particulars. (2) Paragraph IX concludes that the listed "acts and omissions" directly and proximately caused
"the injuries and damages" described in paragraphs X-XII. Paragraph XIII avers the notice required by
the Act and paragraph XIV prays for relief.

 Rule 47 of the Texas Rules of Civil Procedure requires that a claim for relief shall contain
a "short statement of the cause of action sufficient to give fair notice of the claim involved." Rule 45
provides that a statement of the plaintiff's cause of action shall be sufficient "when fair notice to the opponent
is given by the allegations as a whole."

 The Eckmanns' petition contains no general allegation that Des Rosiers negligently or
fraudulently misrepresented any matter. The words "misrepresent" and "misrepresentation" do not appear
in the petition; the petition contains no word derived from either. The petition does not allege that any
particular statement attributed to Des Rosiers was known by him to be false when made or that he made
the statement without knowledge of the truth. The petition does not allege that any statement attributed to
him expressed a pretended opinion made to deceive. (3) All statements attributed to Des Rosiers are, on the
other hand, expressly claimed to be actionable under a general allegation of negligence and gross negligence
because they were a departure from the applicable standard of care. Interpreted liberally, the allegations
as a whole will not support a reasonable inference that the Eckmanns intended to plead causes of action
for negligent or fraudulent misrepresentation. We hold accordingly. See Boyles v. Kerr, 855 S.W.2d 593,
601 (Tex. 1993).




INFORMED CONSENT


 In their petition, the Eckmanns listed several acts and omissions by Des Rosier that they
contend constituted actionable negligence. Most pertain to an alleged failure on his part to inform Mrs.
Eckmann sufficiently regarding the risks and hazards of removing her ovaries in the course of the surgery;
consequently, Des Rosiers was negligent in failing to obtain Mrs. Eckmann's informed consent before
surgery.

 The Act regulates suits against physicians "involving a health care liability claim that is based
on the physician's failure to disclose or adequately disclose the risks and hazards involved." See Act §
6.02.

 The Act establishes the Medical Disclosure Panel, attached to the Texas Department of
Health, and requires that the panel investigate "in order to determine which . . . treatments and procedures
do and do not require disclosure of the risks and hazards to the patient." See Act § 6.04(a). Lists of such
procedures and treatments are published in the Texas Register. Physicians are required to disclose to
patients any listed risks and hazards involved in a contemplated medical treatment or surgical procedure. 
See Act § 6.05. The duty may be satisfied prima facie if the physician discloses the listed risks and hazards
in a form that the patient signs, provided a witness also signs the form and it "specifically states the risks and
hazards that are involved in the medical care or surgical procedure in the form and to the degree required
by the panel" as published in the Texas Register. Disclosure in the manner indicated raises a rebuttable
presumption that the physician has satisfied his or her duty under section 6.05 of the Act to disclose the
risks and hazards involved. See Act § 6.07(b). Des Rosiers furnished Mrs. Eckmann a form listing risks
and hazards associated with the contemplated surgery. A copy is included in the summary judgment
record.

 The Eckmanns complain firstly that the attachments to Des Rosiers's motion for summary
judgment were insufficient to raise the presumption because (1) the form he utilized differed from the panel
form and (2) the risks and hazards stated in his form were outdated because the risks and hazards had been
revised by the panel before Mrs. Eckmann's operation in September 1993. 

 The attachments to the motion for summary judgment also included, however, a copy of
the consent form furnished by the hospital where the surgery was performed. It complied exactly with the
most recent requirements of the panel published in the Texas Register at the time, both as to form and as
to the hazards and risks listed for Mrs. Eckmann's surgery. The Eckmanns do not contest the sufficiency
of the form to advise Mrs. Eckmann adequately concerning the risks and hazards associated with the
surgery. We find in the Act nothing that makes its provisions dependent upon the physician's personally
promulgating the disclosure form. See Jones v. Papp, 782 S.W.2d 236, 240 (Tex. App.--Houston [14th
Dist.] 1989, writ denied). Thus, it appears the form provided by the hospital was adequate to raise the
presumption that Des Rosiers performed his duty under section 6.05 of the Act.

 The Eckmanns contend secondly, however, that even though the hospital form was
contained in the summary judgment record before the trial court, we may not consider it in deciding whether
the summary judgment was erroneous. They argue as follows: (1) the sufficiency of the hospital form
cannot be determined save in comparison with the form and list of risks and hazards published in the Texas
Register; (2) nothing in the summary judgment record indicates affirmatively that the trial judge took judicial
notice of the contents of the Texas Register; and (3) we may not, in our appellate review of the summary
judgment, indulge any presumption in favor of the judgment in the absence of any indication that the record
before us is incomplete. We disagree with the argument.

 The power of the trial court to take judicial notice of the contents of the Texas Register and
Texas Administrative Code is indisputable, whether the court acts on its own motion or the motion of a
party. The judge of a trial court comes under a mandatory duty to take such notice on the request of a
party who complies with the requisite procedure. See Tex. R. Civ. Evid. 204. 

 We believe the duty is also mandatory, even in the absence of a request under Rule 204,
respecting administrative agency regulations published in the Texas Register and Texas Administrative
Code. Such regulations "are to be judicially noticed." Tex. Gov't Code Ann. § 2002.022(a), .054(1)
(West 1997). The passive-verb phrase "are to be" is obviously poor usage, but we believe it undoubtedly
means "must" because of the inherent nature of agency regulations. These regulations are not the
adjudicative facts contemplated in Rule 204. They are legislative facts, or a part of the body of law a court
is required to apply in reasoning toward a decision. Martin v. Burcham, 203 S.W.2d 807, 810 (Tex. Civ.
App.--Fort Worth 1947, no writ); Olin Guy Wellborn III, Judicial Notice Under Article II of the Texas
Rules of Evidence, 19 St. Mary's L. J. 1, 6-13 (1987). As a source of law, agency regulations are like
statutes or the decisions of a higher court to which a lower court owes obedience under the doctrine of
stare decisis. Sections 2002.022(a) and 2002.054(1) of the Government Code therefore "require that the
contents of the Texas Register and Texas Administrative Code be judicially noticed." Wellborn, supra,
at 29 (emphasis added). 

 We have in any event, the power to take judicial notice of such published regulations for
the first time on appeal in reaching an appellate decision on such matters as whether the trial court properly
applied the law to the undisputed adjudicative facts shown in the summary judgment record and whether
any error in that respect was harmless. See Office of the Public Util. Counsel v. Public Util. Comm'n,
878 S.W.2d 598, 600 (Tex. 1994). We hold no error appears in the summary judgment record under the
Eckmanns' theory; and, if we are mistaken in that regard, we hold any error harmless based upon our own
comparison of the hospital form and its contents to those published in the Texas Register and Texas
Administrative Code. 



STRIKING THE ECKMANNS' RESPONSE


 In response to Des Rosiers's motion for summary judgment, the Eckmanns filed an
unverified response. The response generally urged the Eckmanns' position that Des Rosiers did not
sufficiently inform Mrs. Eckmann of the risks associated with removal of her ovaries and hormone-replacement therapy. The response concluded with an acknowledgment. Attached to the response were
twenty-one pages consisting of copies of miscellaneous medical records, a document entitled "Patient
Information--Ogen Vaginal Cream," published apparently by Abbott Laboratories of Chicago, Illinois,
passages from a book apparently entitled Menopause and Hysterectomy, a letter from a psychiatrist to
the Eckmanns indicating his preliminary opinion that Des Rosiers did not sufficiently inform Mrs. Eckmann
of the risk associated with surgical menopause, and a letter from a gynecologist setting out the risks of ovary
removal and stating that physicians are required to inform patients of those risks. None of the attached
documents are certified or executed under oath. Standing alone, none of the attachments set forth material
admissible in evidence.

 On Des Rosiers's motion, the trial court struck the Eckmanns' unverified response and
attachments. The Eckmanns complain they could not file a verified response or amendments within the
seven-day limit set out in Rule 166(a)(c), Texas Rules of Civil Procedure, because they received Des
Rosiers's motion to strike within that period; that they were therefore not given a true opportunity to
respond; and that the record is devoid of any showing that they were given an opportunity to amend but
refused to do so as contemplated by Rule 166a(f).

 Rule 166a(f) states that "[t]he court may permit affidavits to be supplemented . . . by further
affidavits." The trial court's power to allow supplementary affidavits to cure formal defects is readily
apparent. The burden lay upon the Eckmanns, however, to request such relief and, if necessary, to request
a continuance in order to procure and file the necessary affidavits. See Webster v. Allstate Ins. Co., 833
S.W.2d 746, 750 (Tex. App.--Houston [14th Dist.] 1992, no writ). The Eckmanns have not brought us
an appellate record showing error by the trial court, for nothing in the record shows the trial court denied
their request for continuance or any other relief necessary to cure the formal defect in their response and
attachments. (4) We hold they have not shown reversible error.

SUFFICIENCY OF DES ROSIERS'S AFFIDAVIT


 The Eckmanns complain that Des Rosiers's uncontroverted affidavit is insufficient to defeat
as a matter of law one or more of the elements of their cause of action for negligence, namely (1) a duty
to act according to a certain standard of care; (2) breach of the duty; (3) injury; and (4) a causal connection
between the conduct and the injury. We need not discuss the sufficiency of Des Rosiers's affidavit as to
all such elements.

 The Eckmann's negligence allegation may be summarized as follows: (1) Des Rosiers did
not obtain informed consent because he failed adequately to inform Mrs. Eckmann of the risks and hazards
involved in the surgery performed; (2) he recommended removal of the ovaries rather than their retention;
and (3) he failed to determine before the surgery whether she was intolerant of hormone-replacement
therapy.

 We have discussed previously the unrebutted presumption of informed consent arising from
Mrs. Eckmann's executing the form supplied by the hospital. Concerning Des Rosiers's recommendation
that the ovaries be removed, he stated in his affidavit that his recommendation was based on his opinion
that removal might be indicated, depending on what the actual surgery revealed, because Mrs. Eckmann
was over age 45, nearing menopause, and had extensive pelvic endometriosis involving the sigmoid colon. 
His affidavit continued as follows:



The endometriosis was abnormally large and was what appeared to be fibroid on the
sonogram. There was further endometriosis left of the sigmoid colon at the time of surgery,
which in addition to the patient's age, was an indication of . . . removal of both ovaries. 
Had the ovaries not been removed at the time of surgery, it is, in reasonable medical
probability, more probable than not, that the endometriosis would have continued to
increase in size, involve more of the sigmoid colon and eventually require resection of the
sigmoid colon.


* * *



The standard of care for a patient who is over 45 years of age and has extensive pelvic
endometriosis involving the sigmoid colon is to remove the ovaries at the time of the
hysterectomy.



Concerning the matter of determining before surgery whether Mrs. Eckmann was intolerant of hormone-replacement therapy, Des Rosiers referred in his affidavit to her declarations to his nurse and on a written
form supplied by the hospital that she had no known allergies; and the applicable standard of care did not
include ordering allergy tests for a patient's reaction to hormones in the absence of any other indication of
possible allergies. The affidavit continued by setting forth Des Rosiers's opinions as follows, based upon
reasonable medical probabilities and his examination of Mrs. Eckmann's medical records for the post-operative period:



[Mrs. Eckmann] is having what is considered normal reactions to surgical menopause. 
Any possible allergy reaction . . . is a result of the filler in the creams and pills she has taken
and not as a result of the hormones themselves. 


* * * 



[She] is not intolerant to hormone replacement therapy [and] has not suffered rapid skin
aging, bone deterioration, painful joints or any other hormonal related change in her mood
and body that would not have occurred naturally as a result of aging if her ovaries had been
retained. . . [E]strogen replacement would eliminate these symptoms [and] . . . [A]ny ill
effects . . . as a result of failure to take estrogen or any reaction to filler in pills or creams
are not permanent. 



 We believe these portions of the affidavit are prima facie sufficient to establish as a matter
of law, in the absence of controverting affidavits, that Des Rosiers's recommendation for and surgical
removal of the ovaries were not a departure from the applicable standard of care and not a proximate cause
of the injuries alleged by Mrs. Eckmann in her petition. See Republic Nat. Leasing Corp. v. Schindler,
717 S.W.2d 606, 607 (Tex. 1986) (summary judgment may rest upon expert's uncontroverted affidavit
where the expert's statements are clear, positive, direct, otherwise credible, free from contradictions and
inconsistencies, and susceptible of being easily controverted). We hold accordingly.

 Finding no error, we affirm the judgment below.



 

 John Powers, Justice

Before Justices Powers, Jones and Kidd

Affirmed

Filed: February 27, 1997

Publish
1.   The Eckmanns bring a single point of error that the trial court erred in granting the
summary judgment. We discuss their various "subpoints" under the headings indicated in the
text. Several discussions in their brief, under a particular subpoint, pertain to more than one
"subpoint."
2.   In Paragraph IX, the Eckmanns alleged Des Rosiers "violated the duty of care to Mrs.
Eckmann to exercise the ordinary care and diligence exercised by other physicians in the
same or similar circumstances, and was negligent and grossly negligent" in one or more of the
following particulars:


a. Des Rosiers "failed to inform" the Eckmanns "of the profound
consequences of the elective ovariectomy and . . . the subsequent
requirement for hormone replacement therapy."


b. Des Rosiers "misinformed" the Eckmanns regarding the health risks of
ovaries removal and hormone-replacement therapy as compared to
retention of the ovaries, and failed to explain the side effects of removing
the ovaries.

 

c. "None of the benefits of retention of the ovaries were disclosed to" the
Eckmanns and Des Rosiers "intentionally withheld information as a means
of promoting more extensive surgical procedures than were actually
required."


d. Des Rosiers's recommendation for removal of the ovaries was not a
competent medical recommendation because it was contrary to prevailing
medical recommendations under the existing circumstances. 


e. Des Rosiers "did not advise Mrs. Eckmann that she would require
[hormone-replacement therapy] probably for the rest of her life."


f. Des Rosiers "did not check to see if Mrs. Eckmann, who has had
incidences of allergic reaction, was tolerant of replacement hormones."


g. Des Rosiers "did not advise the" Eckmanns "that current medical
literature and medical studies disclosed that" hormone-replacement
therapy poses "increased health risks, in particular an increased risk of
breast cancer."


 In pleading facts outside paragraph IX, the Eckmanns attributed to Des Rosiers
several other statements without an express declaration that they were actionable on any
theory:


a. Des Rosiers recommended removal of the ovaries as well as the uterus
because the latter would serve no function when Mrs. Eckmann reached
menopause and because of the risk of cancer. He allegedly stated that
such procedure was "safe," would have "no effect" on her sex life, and
that she would be "better off" having the ovaries removed before the
onset of menopause in four years. (Paragraph IV).


b. On a subsequent visit, Des Rosiers stated that the "ovaries do 'nothing'"
after a woman stops ovulating" and that "neither the uterus nor the
ovaries have anything to do with sex" and their removal "would not affect
either her general health or her ability to enjoy sexual relations with her
husband. (Paragraph V).


c. Des Rosiers told Mrs. Eckmann that she "need not worry" about her
repeated positive tests for hepatitis. (Paragraph VI).
3.   "The elements of fraud are a material misrepresentation, which was false, and which was
either known to be false when made or was asserted without knowledge of the truth, which
was intended to be acted upon, which was relied upon, and which caused injury." DeSantis v.
Wackenhut Corp., 793 S.W.2d 670, 688 (Tex. 1990). "A pure expression of opinion will not support
an action for fraud." Transport Ins. Co. v. Faircloth, 898 S.W.2d 269, 276 (Tex. 1995). A
pretended opinion is actionable if made to deceive and a false statement of existing fact is actionable,
but representations as to future or contingent events are in general only opinion and may not be deemed
fraudulent though a predicated fact does not occur. Texas Farm Bureau Cotton Ass'n v. Craddock,
285 S.W. 949, 950 (Tex. Civ. App.--Texarkana 1926, writ ref'd).
4. The Eckmanns represented themselves in the trial court and did not engage counsel until this
appeal was taken.



t, pertain to more than one
"subpoint."
2.   In Paragraph IX, the Eckmanns alleged Des Rosiers "violated the duty of care to Mrs.
Eckmann to exercise the ordinary care and diligence exercised by other physicians in the
same or similar circumstances, and was negligent and grossly negligent" in one or more of the
following particulars:


a. Des Rosiers "failed to inform" the Eckmanns "of the profound
consequences of the elective ovariectomy and . . . the subsequent
requirement for hormone replacement therapy."


b. Des Rosiers "misinformed" the Eckmanns regarding the health risks of
ovaries removal and hormone-replacement therapy as co