**Philip NELSON, Jr. and Carrie Nelson, Appellants,**

v.

**Adnan Ali NAJM, Appellee.**

No. 01–02–00451–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 23, 2003.

Rehearing Overruled Nov. 21, 2003.

Clinard J. Hanby, The Woodlands, TX, for Appellants.

William F. Harmeyer, William F. Harmeyer & Associates, Gerald Fife Fowler, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices KEYES and ALCALA.

## OPINION

EVELYN V. KEYES, Justice.

This is an appeal from a bench trial in which the court awarded damages of $100,000 plus pre-judgment interest and attorney's fees to appellee/plaintiff, Adnan Ali Najm, in his suit against appellants/defendants, Philip and Carrie Nelson, based on Philip Nelson's failure to disclose material information to Najm before Najm bought Nelson's gas station. Najm sued the Nelsons, bringing claims for deceptive trade practices (DTPA),[1] common law fraud, real estate fraud, and wrongful foreclosure.

In six issues presented for review, the Nelsons contend that (1) Najm's deceptive trade practices claim was barred by limitations; (2) there was no proof of damages; (3) there was no "misrepresentation" that would support a recovery on any claim; (4) the "as is" and buyer-inspection provisions in the sales contract precluded recovery on all claims; and (5) there was no independent basis for recovery on the wrongful foreclosure claim. We affirm.

### Facts

The Nelsons owned the Cougar Texaco gas station near the University of Houston for roughly 30 years and Philip Nelson operated it. In 1996, Najm bought the station for $175,000. He made a down payment of $100,000 and executed a note to the Nelsons for the remainder.

There were four underground gasoline tanks and one underground waste oil storage tank. Although the gasoline tanks were registered with the Texas Natural Resource Conservation Commission (TNRCC), the waste oil tank was not. Nelson told Najm about the four gasoline tanks, but not about the waste oil tank. On the commercial property disclosure form, Nelson checked the "not aware" box in response to a question concerning underground storage tanks and "not aware" in response to a question regarding toxic waste; he left all boxes blank in response to a question regarding hazardous waste on the property.

The station was not in compliance with state environmental guidelines governing underground petroleum storage tanks. As the station owner, Nelson was required to comply with administrative requirements promulgated to regulate such tanks. As part of what was called "Phase One," Nelson should have implemented modifications to assure tank and pipe system integrity by the end of 1989. *See* 30 TEX. ADMIN. CODE ANN. § 334.44(b)(1) (1989) (Tex. Comm'n Envtl. Quality, Underground &

---

1. TEX BUS & COMM.CODE ANN. § 17.41–.50 (Vernon 2002).

Aboveground Storage Tanks). By the end of 1994, as part of Phase Two, Nelson should have installed spill prevention equipment. *Id.* § 334.51(b)(1)(B). Nelson did not comply with either Phase One or Phase Two. Despite testimony that all gas station owners were regularly notified by TNRCC of changing environmental regulations, Nelson testified that he never received any notices and that he relied on "Mr. Texaco" to comply with all regulations. He did acknowledge, however, that he received his annual dues notice from TNRCC. In addition to not disclosing the existence of one of the tanks, Nelson did not comply with his statutory duty as the seller to inform Najm in writing of a tank owner's obligations in regard to tank registration, construction, and certification. *Id.* § 334.9 (Seller's Disclosure).

The parties signed the earnest money contract in mid-June, and the closing took place on July 1, 1996. In the interim, Najm asked Nelson if he could have the site inspected. Nelson demurred, saying there was no need for testing. He told Najm that testing would be a waste of money and that he had no problems with the government, saying, "Look, you don't have to make no test. This is a gas station. I'm selling gas. You see the people buying gas, selling gas, and that's it. And I have been here 30 years. I don't have any problem. I selling gas. Everything is fine." Najm did not pursue testing or arrange for any environmental inspections before the closing. Nevertheless, the property deed included a clause noting that [Najm] had inspected the property and was relying solely on his own investigation, not on information provided by [Nelson] or on [Nelson's] behalf. In addition, the earnest money contract contained two provisions pertinent to our analysis of this case. The first provision specified that [Najm] was accepting the property "as-is" in its then-current condition. The second provision specified that the sale was contingent on [Najm's] approval of a contamination inspection.

Shortly after the closing on the property, Najm's mother died abroad; he was out of the country for several months seeing to his mother's affairs while Nelson continued to run the gas station. When Najm returned, he took over operation of the station. When the company that had supplied gasoline to Nelson told Najm it would no longer service the station, Najm attempted to enter into a fuel contract with Petroleum Wholesale, Inc., a gasoline supplier. However, when the supplier's representative, Joe Berry, came to the station to discuss the matter, Berry immediately discovered that the soil was contaminated. He informed Najm that neither his company nor any other could supply gas to the station until it came into compliance with environmental regulations, and he estimated the cost of bringing the station into compliance at approximately $60,000. He also informed Najm of the existence of the waste oil tank.

Najm asked Nelson to pay for the modifications, but he declined to do so. Najm never reopened the station and never obtained a loan to open a convenience store on the premises as he had planned. He sold the property to Jackie Spencer for $125,000, but stopped paying on the note he executed with the Nelsons. In 1998, the Nelsons foreclosed on the property, reacquiring it for $87,000. They negotiated a deal with Spencer that allowed him to repurchase the station from them for $135,000.

After the foreclosure, Najm sued the Nelsons for fraud and wrongful foreclosure. Nelson removed all of the tanks from the property immediately after the foreclosure. He did not permit Najm to test the soil at the site until ordered by the

trial court to do so. The report prepared by Najm's expert showed that the soil was contaminated. The report prepared by Nelson's expert reached the opposite conclusion, showing there was no contamination. The trial court awarded damages to Najm and this appeal ensued.

## Sufficiency of the Evidence

In issues three, four and five, the Nelsons contend that (1) the evidence is legally and factually insufficient to show that Philip Nelson made a material misrepresentation and (2), the "as-is" and "independent inspection" provisions of the contract negate causation on all of Najm's causes of action. Thus, they contend that Najm cannot recover on his fraud or real estate claims. In issue two, they contend there is no or insufficient evidence of damages.

### Standards of Review

■ When we review legal sufficiency, we review the evidence in a light that tends to support the finding of the disputed facts and disregard all evidence and inferences to the contrary. *Lee Lewis Constr., Inc. v. Harrison,* 70 S.W.3d 778, 782 (Tex.2001). When we review factual sufficiency, we conduct a neutral review of all the evidence. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). We will reverse for factual insufficiency only if the ruling is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *Minucci v. Sogevalor, S.A.,* 14 S.W.3d 790, 794 (Tex.App.-Houston [1st Dist.] 2000, no pet.).

■ In a bench trial, the trial court, as fact finder, is the sole judge of the credibility of the witnesses. *Munters Corp. v. Swissco–Young Indus., Inc.,* 100 S.W.3d 292, 296–97 (Tex.App.-Houston [1st Dist.] 2002, pet. dism'd). The judge may take into consideration all the facts and surrounding circumstances in connection with the testimony of each witness and

accept or reject all or any part of that testimony. *Id.* When, as here, the trial court does not enter findings of fact and conclusions of law after a bench trial, we may uphold the judgment on any legal theory supported by the pleadings and evidence. *Fair Deal Auto Sales v. Brantley,* 24 S.W.3d 543, 546 (Tex.App.-Houston [1st Dist.] 2000, no pet.). As the Nelsons note, Najm's pleadings support causes of action for fraud, real estate fraud, wrongful foreclosure, and DTPA violations.

### Evidence of Fraud

■ To recover for common law fraud, Najm was required to establish that (1) Nelson made a material representation; (2) the misrepresentation was made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion; (3) Nelson made the misrepresentation with the intention that it should be acted on by Najm; and (4) Najm acted in reliance on the misrepresentation and thereby suffered injury. *T.O. Stanley Boot Co. v. Bank of El Paso,* 847 S.W.2d 218, 222 (Tex.1992); *Texas Capital Sec., Inc. v. Sandefer* 58 S.W.3d 760, 771 (Tex.App.-Houston [1st Dist.] 2001, pet. denied). A failure to disclose information does not constitute fraud unless there is a duty to disclose. *Insurance Co. of N. Am. v. Morris,* 981 S.W.2d 667, 674 (Tex.1998).

■ Nelson argues that he did not make an affirmative misrepresentation and did not fail to disclose material facts. We cannot agree. The record reflects that he did both. Nelson failed to disclose the existence of the underground waste oil tank, which we conclude was a material omission. He did not verbally inform Najm about this tank or disclose it on the commercial property form. He made an affirmative misrepresentation when he told

Najm—in response to a request to inspect the property—that an inspection was not necessary, that everything was "fine," and that he had "no problem" with the government, while using the operation of the station as demonstrative proof of these assertions.

■ Nelson contends that his assertions were true statements, and thus cannot be considered misrepresentations. We consider it significant that Nelson, by making this argument, effectively admits that he made these statements, because the record shows that, although Najm testified that he met with Nelson on numerous occasions to discuss the sale of the station, Nelson repeatedly denied ever meeting Najm before the day of the closing. That observation aside, Texas courts recognize that a statement that is literally true may be actionable if used to create an impression that is substantially false. *See State Nat'l Bank v. Farah Mfg. Co.*, 678 S.W.2d 661, 681 (Tex.App.-El Paso 1984, writ dism'd by agr.). A false representation may consist of a deceptive answer or any other indirect but misleading language. *Id.* Here, the trial court evidently determined that Nelson's statements created a false impression.

■ At common law, fraud refers to an omission, or concealment in breach of a legal duty, when the breach causes injury to another. *Jones v. Texas Dept. of Protective and Regulatory Servs.*, 85 S.W.3d 483, 491 (Tex.App.-Austin 2002, no pet.). It may consist of both active misrepresentation and passive silence. *Id.* Texas law has long imposed a duty to abstain from inducing another to enter into a contract through fraudulent means. *See Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001).

Relying chiefly on *Prudential Insurance v. Jefferson Associates*, 896 S.W.2d 156, 162 (Tex.1995), Nelson contends that (1) he

had no duty to disclose this information because Najm could have discovered the tank himself upon "reasonable investigation and inquiry" and there was no proof that Nelson had actual knowledge of contamination or non-compliance with current environmental regulations, and (2) the "as-is" clause in the contract and the independent inspection provisions in the bill of sale and the deed preclude Najm from recovering on any of his causes of action, even if Nelson had a duty to disclose. We do not agree.

Nelson had a statutory duty to disclose not only the existence of every tank on the property, but also the regulations governing their functioning and maintenance. *See* 30 TEX. ADMIN. CODE ANN. § 334.9. That Najm did not plead these regulations does not extinguish Nelson's duty. *See Eckmann v. Des Rosiers*, 940 S.W.2d 394, 399 (Tex.App.-Austin 1997, no writ) (trial court has mandatory duty to take judicial notice of Texas Administrative Code). Moreover, Nelson thwarted Najm's attempt to inspect the station. Nelson's argument that the evidence only creates an inference that he *should* have known about environmental regulations simply because he owned the property is contradicted by Berry's testimony that all gas station owners are regularly notified by TNRCC of changing environmental regulations. Apparently, the trial court did not find Nelson's disclaimer of any knowledge to be credible, given the number of years he owned the station, the TNRCC's custom of sending all notices directly to the owners, and his receipt of annual dues notices from the TNRCC. We conclude that Nelson had a duty to disclose the existence of the waste oil tank.

We further conclude that the "as-is" provision in the contract did not bar Najm's recovery. Although the court in *Prudential* held that an as-is agreement

negated causation that was essential to the plaintiff's recovery for fraud, it also pointed out that the plaintiff did not assert fraud in the inducement, and noted that a buyer is not bound by an as-is agreement that he is induced to make because of the seller's fraudulent representation or concealment of information. 896 S.W.2d at 162; *see also Smith v. Levine*, 911 S.W.2d 427, 432 (Tex.App.-San Antonio 1995, writ denied) (noting that validity of "as-is" agreement is determined in light of whether there was knowing misrepresentation or concealment of known fact). Given the circumstances here, we conclude that the "as-is" clause was not valid because Nelson concealed a known fact, and we hold that this clause did not preclude Najm's recovery on his fraud claims.

The trial court assessed the parties' credibility and evidently found that Nelson made a material misrepresentation, knowing it was false, and intending for Najm to act upon it. The record before us contains legally and factually sufficient evidence to sustain the trial court's determination that Nelson committed fraud.

We overrule issues three, four, and five.

### Evidence of Damages

■ In issue two, the Nelsons contend that Najm cannot recover on any of his claims because the evidence of damages is legally and factually insufficient. As a threshold matter, we address Najm's argument that Nelson has not preserved error because he did not raise this challenge in a motion for new trial. Najm's reliance for this argument on *Ex–Change Auto Sales v. KUT Auto Sales*, 2002 WL 31418038 (Tex. App.-Dallas 2002) (not designated for publication) is misplaced. The party in *Ex–Change* did not challenge the sufficiency of the evidence to support the damages award; rather, his complaint addressed whether the trial court had applied a statutorily incorrect measure of damages. Rule

324b of the Rules of Civil Procedure specifies that a motion for new trial is a prerequisite to preserving error on appeal only in jury cases, not in nonjury cases. Tᴇx.R. Cɪv. P. 324b. It is well settled that challenges to the sufficiency of the evidence in nonjury cases may be raised for the first time on appeal. *See Strickland v. Coleman*, 824 S.W.2d 188, 191 (Tex.App.-Houston [1st Dist.] 1991, no writ). As Nelson notes, the amendment to rule 33.1 of the Rules of Appellate Procedure codified existing law by specifying that no motion for new trial is required to preserve sufficiency challenges to the evidence or to damages in nonjury cases. *See* Tex. R.Aᴘᴘ. P. 33.1(d). Therefore, we will address the merits of this complaint.

■ There are two alternative measures of damages for common-law fraud: the out-of-pocket measure and the benefit-of-the-bargain measure. *See Formosa Plastics Corp. USA v. Presidio Eng'rs*, 960 S.W.2d 41, 49 (Tex.1998). Out-of-pocket damages are determined by comparing the value paid to the value received, while benefit-of-the-bargain damages compare the value as represented to the value received. *Id.* In addition to these alternative measures of damages, Texas courts have long held under general principles of common-law fraud that one who is induced by fraud to enter into a contract has a choice of remedies: he may either recover his monetary damages flowing from the fraud or he may elect the equitable remedy of rescission in lieu of damages and demand a return of any amount paid. *Scott v. Sebree*, 986 S.W.2d 364, 368 (Tex.App.-Austin 1999, pet. denied). This election of remedies recognizes that, depending on the circumstances, a defrauded party may not be made whole by a recovery of actual damages, but instead may need an equitable remedy such as rescission. *Id.* When there is fraud in the inducement to sign a

contract, the injured party may elect damages on the contract or the equitable remedies of rescission or reformation, but courts generally apply a less strict standard when granting rescission or restitution. *Smith v. National Resort Cmtys., Inc.*, 585 S.W.2d 655, 658 (Tex.1979).

Nelson argues that Najm cannot recover benefit-of-the-bargain or out-of-pocket damages because he did not establish the fair market value of the property at the time of the sale. Fair market value is defined as the price a willing buyer would pay to a willing seller. *See Wendlandt v. Wendlandt*, 596 S.W.2d 323, 325 (Tex.Civ.App.-Houston [1st Dist.] 1980, no writ). Najm, as a willing buyer, agreed to pay Nelson $175,000 for the property. Accordingly, the fair market value of the property was this contract price. Nevertheless, the amount of the damage award persuades us that it represented neither out-of-pocket nor benefit-of-the-bargain damages. Rather, we conclude the trial court imposed an equitable remedy, making Najm whole by returning to him the consideration he paid—$100,000. Nelson had already reacquired the property via foreclosure; thus a true rescission of the contract was not possible; nevertheless, this award was the functional equivalent of rescission because it restored Najm to his original position before entering into the contract.

Nelson contends that Najm was not entitled to rescission because (1) he did not plead that issue and (2) he did not give timely notice that he intended to rescind the contract and return, or offer to return, the property. We disagree with both of these arguments. Customarily, a general prayer for relief will support any relief raised by the evidence that is consistent with the allegations and causes of action stated in the petition. *See, e.g., Khalaf v. Williams*, 814 S.W.2d 854, 858 (Tex.App.-Houston [14th Dist.] 1991, no writ). In addition to asking the trial court to return title to the property to him, and award him damages for fraud, Najm's petition included a general prayer for relief. At trial, Najm's counsel clarified the petition by acknowledging that to receive both the property and damages would constitute a double recovery, and he asked the trial court to award one or the other remedy.

We consider the contrary authority Nelson relies on to be distinguishable. In *Hairgrove v. City of Pasadena*, 80 S.W.3d 703, 706 (Tex.App.-Houston [1st Dist.] 2002, pet. denied), the plaintiffs were not seeking rescission; rather, they sought to enjoin adoption of a new tax rate. In *Delaney v. Davis*, 81 S.W.3d 445, 450–51 (Tex.App.-Houston [14th Dist.] 2002, no pet.), the plaintiffs were seeking specific performance. We consider these remedies to be sufficiently different from rescission that the general rule permitting any relief supported by the pleadings should not be abrogated here.

We likewise reject the argument that Najm was required to provide notice and an offer to return the property to be entitled to rescission.[2] Although Nelson cites *Carrow v. Bayliner Marine Corp.*, 781 S.W.2d 691, 696 (Tex.App.-Austin 1989, no writ), in support of his contention that such notice was required, *Carrow* (and the authority on which it relies) dealt with rescission under the DTPA, not rescission as a remedy for common law fraud. The decision to grant an equitable remedy is within the discretion of the trial court. *Sandefer*, 58 S.W.3d at 774.

**2.** In effect, Najm provided notice by complaining to the Nelsons about the property defects, then ceasing to pay the note.

We hold that the trial court did not abuse its discretion in awarding Najm $100,000 in damages.

We overrule issue two.

Given our disposition of issues two through five, we need not address whether the DTPA claim was barred by limitations or whether there was an independent basis for wrongful foreclosure. *See Fair Deal Auto Sales,* 24 S.W.3d at 546 (noting that appellate court may uphold judgment on any theory advanced).

We affirm the judgment.