# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-23-00359-CV

---

**Avis Ann Stahler, Appellant**

**v.**

**Holly Hall, Appellee**

---

### FROM THE COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY
### NO. C-1-CV-23-000781, THE HONORABLE TODD T. WONG, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

Appellant Avis Ann Stahler sued Holly Hall for damages arising from a business dispute. Stahler and Hall planned to run a resale shop together, but their cooperation ended before the store opened. Hall locked Stahler out of the store. Stahler retrieved some of the merchandise she had brought to the store and filed suit, and Hall made counterclaims. In a de novo trial, the county court at law rendered a take-nothing judgment on all claims.

By three points of error, Stahler contends that the evidence established that Hall was liable in quantum meruit, that the evidence established that Hall was grossly negligent, and that the trial court erred by offsetting Hall's rent payments against Stahler's inventory losses. We will affirm the judgment.

## BACKGROUND

Stahler and Hall agreed to open a resale shop in 2021 without a written agreement concerning the business. Stahler testified that they agreed to open a for-profit store, but Hall testified that she and Stahler talked about opening a nonprofit thrift store. Stahler testified that Hall was to pay rent and run the front of the shop, while Stahler would provide inventory, keep track of it, and restock it. After monthly expenses and startup expenses were paid, they would split the profit 50-50; Stahler said there was some "talk about donating to homeless animals," but no specific percentage was discussed.

Stahler found a building to rent for the store in mid-August 2021, and Hall signed a one-year lease to begin September 1, 2021, with $3,000 rent due monthly. Hall made a $7,000 initial payment; the memo line on the check states that it is for first- and last-month's rent plus a deposit, but Stahler testified that the payment was for just the first month's rent and a deposit. The parties opened a bank account into which they each deposited either $250 (Hall's testimony) or $500 (Stahler's testimony).[1] Stahler testified that she installed shelves and racks, moved inventory into the store, and made displays and signs. Stahler testified that Hall was supposed to quit her job and work at the store with her but did not and worked at the store only on weekends. She also testified that she hired people to assist her in readying the store for opening.

---

[1] Stahler typed a distribution history showing that Hall transferred $350 to her personal account in August and September, paid $100 for electricity, then transferred $500 to herself on October 3—the day she locked Stahler out of the store.

The October 2021 bank statement showed an October 1, 2021 balance of $550. The $550 balance was reduced by two transactions—a $500 withdrawal by Hall and a $10 bank fee—leaving $40 on October 29, 2021. Hall testified that the account was closed.

Stahler testified that, on October 3, 2021, she went to the store to see what Hall was doing, left to get something to eat, and returned to find that Hall had changed the locks and withdrawn $500 from the joint bank account.

The parties exchanged text messages on October 8, 2021. One text excerpt has Hall's boyfriend telling Stahler, "If your shit is not off the porch this weekend I will sell it or donate it to Goodwill that easy." In a text from Hall later in the evening, Hall stated that Stahler could be a silent partner until November 1 when they would "regroup with a contract. I won't sell or trash your expensive items. Just clothes and knickknacks." Stahler responded, "That doesn't work for me." She also said Hall did not have permission to throw away, give, or sell any items in the shop.

On October 9, 2021, Stahler had an attorney send a letter demanding safe return of all of her property and allowing her access on October 16, 2021, for movers to pack and remove her property. The letter also set out a narrative of events and agreements. Stahler recited that Hall paid $7,000 to the landlord for a deposit and first- and last-month's rent. She also recited that Hall had agreed to quit her job on September 1 to split the work in preparing the shop, that the two were to share equally the profit/loss from the store, that Hall was to open and close and run the front of the shop, and that Stahler was to run the back of the shop including keeping the shop stocked, displayed, replenished, and advertised. Stahler asserted that she supplied the shop with 4,423 items of inventory valued at $20,000 and worked 280 hours cleaning and organizing the shop. She said she hired and paid $3,375 for additional help because Hall continued working elsewhere. She paid $500 to someone to set up the shop and spent $865 on supplies and materials.

Stahler introduced into evidence lists of items in categories with cost of goods and suggested retail amounts. She also introduced a collage of clippings from what appears to be internet listings for items with prices. She also introduced a list of supplies she purchased such as a price tag gun, price tags, cash register paper rolls, signs, and hangers. She sought to recover the additional cost of the storage unit she moved her items into from the store compared to the cost of the storage unit she had before she stocked the store. Stahler summarized her costs, expenses, and losses as follows:

| | |
|---|---|
| Missing Inventory | $17,445 |
| Services & Materials | 1,615 |
| Labor | 2,145 |
| Shop Supplies | 419 |
| Bank Account | 500 |
| Moving Cost | 2,280 |
| Cost for Court | 1,618 |
| | $26,022 |

Stahler called two witnesses who testified that they helped move Stahler's items into and out of the store. They testified that many of Stahler's items were missing. One testified that Stahler paid around $700 for movers and a U-Haul vehicle to retrieve her items on October 16, 2021.

Hall testified that Stahler was responsible for getting the paperwork for the store together and for the failure for there to be any paperwork. She said she worked full time for two years to save $20,000 to open the store. She continued to work as a nurse as the store turned to be a nonprofit to help animals and homeless people because she needed her job income so that she could pay bills. She worked some hours to help prepare the store and used her own funds to pay friends and Stahler's friend who helped with pre-opening cleanup and setup.

4

Hall testified that Stahler wanted Hall to be the silent partner, but Hall did not want that arrangement. Hall testified that she and Stahler argued so she changed the locks because Stahler wanted things "to be her way" and Hall "wasn't going to be yelled at." Hall said Stahler's daughter was taking pictures of the property and caused other tenants to call the police. Hall testified that she "didn't want to just give [Stahler's belongings] to her friends and people that worked for her." Hall testified that, when Stahler had not collected all of her belongings within eight hours on October 16, Hall packed up things that Stahler had left around the store and took them to Stahler and left them all on her yard. Hall testified that some of Stahler's items were left on the store porch, and that local homeless people took things from the porch—including some of Stahler's items. Hall testified that, by November 1, 2021, all of Stahler's property had been returned except perhaps one or two items. Hall then opened the store stocked with donations. She said that the "overflow" of clothes at the store went to homeless people. She testified that the business was thriving but also that it had earned a total of $3,000 in its seventeen months of operation.

Stahler filed suit in justice court claiming damages of $18,191 on claims of breach of contract, conversion, and quantum meruit. Hall counterclaimed for recovery of damages of $10,000 on theories of intentional dissipation of her funds, conversion, quantum meruit, slander, harassment, trespassing, and bullying. After a hearing, the justice court awarded Stahler $6,979 and $134 in court costs and ordered that Hall take nothing on her counterclaims. Hall appealed and received a trial de novo. The county court at law rendered judgment that both parties take nothing on their claims. Only Stahler appealed to this Court.

5

## STANDARD OF REVIEW

Stahler filed a pro se brief, and Hall did not file a brief. While we construe pro se pleadings liberally and with patience, "pro se litigants must comply with the same rules and standards as those represented by attorneys." *Housing Auth. of City of Austin v. Elbendary*, 581 S.W.3d 488, 491 n.1 (Tex. App.—Austin 2019, no pet.). Briefs "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(i). Stahler's pro se brief cites only one case for the elements of gross negligence. She does not discuss or cite authority for the standard of review and does not specify the nature of her challenge to the sufficiency of the evidence. Although we have the discretion to waive issues for inadequate briefing, *see Fredonia State Bank v. General Am. Life Ins.*, 881 S.W.2d 279, 284 (Tex. 1994), we will address Stahler's issues as we understand them.

Two of Stahler's three issues on appeal expressly challenge the sufficiency of the evidence to support the judgment, and the third does so implicitly. Because Stahler requests reversal of the judgment and rendition of judgment in her favor for $26,022 or, in the alternative, remand, we conclude that she challenges both the legal and factual sufficiency of the evidence. *See Plan B Holdings, LLC v. RSLLP*, 681 S.W.3d 443, 452 n.4 (Tex. App.—Austin 2023, no pet.) (party must request remand to raise factual sufficiency challenge). The trial court was not requested to and did not make findings of fact and conclusions of law in support of its judgment.

In conducting a legal-sufficiency review, we consider the evidence in the light most favorable to the challenged findings, indulge every reasonable inference that supports them if a reasonable fact finder could, and disregard contrary evidence unless a reasonable fact finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005); *University Gen. Hosp., L.P. v. Prexus Health Consultants, LLC*, 403 S.W.3d 547, 550 (Tex. App.—Houston [14th Dist.]

6

2013, no pet.). The evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the decision under review. *University Gen.*, 403 S.W.3d at 551. When a party attacks the legal sufficiency of an adverse finding on an issue on which it had the burden of proof, it must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). When a party challenges the legal sufficiency of the evidence on a finding on which it did not bear the burden of proof, the party must show that no evidence supports the finding. *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 215 (Tex. 2011).

When a party attacks the factual sufficiency of the evidence to support an adverse finding on which it had the burden of proof, it must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence and that the verdict is clearly wrong, unjust, or manifestly erroneous. *Dow Chem.*, 46 S.W.3d at 242; *Nelson v. Najm*, 127 S.W.3d 170, 174 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). We examine the entire record, considering both the evidence in favor of and contrary to the challenged findings. *See Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406-07 (Tex. 1998); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We consider and weigh all the evidence in a neutral light, and we can set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Ellis*, 971 S.W.2d at 407; *Cain*, 709 S.W.2d at 176. When a party challenges the factual sufficiency of evidence supporting an adverse fact finding for which it did not bear the burden of proof at trial, it must show that the evidence as a whole is so weak as to make the finding clearly wrong and manifestly unjust. *In re Marriage of Thrash*, 605 S.W.3d 224, 230 (Tex. App.—San Antonio 2020, pet. denied).

The trial court as the factfinder in a bench trial is the sole judge of the witnesses' credibility. *See Nelson*, 127 S.W.3d at 174. We may not pass on the credibility of the witnesses or substitute our judgment for that of the factfinder. *George Joseph Assets, LLC v. Chenevert*, 557 S.W.3d 755, 765 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). The judge may consider all the facts and surrounding circumstances in connection with the testimony of each witness and accept or reject all or any part of that testimony. *Nelson*, 127 S.W.3d at 174. When, as here, the trial court does not enter findings of fact and conclusions of law after a bench trial, we may uphold the judgment on any legal theory supported by the pleadings and evidence. *Id.*

## DISCUSSION

Stahler contends by three points of error that she proved herself entitled to damages under quantum meruit and gross negligence theories and that the court erred by concluding that her damages were offset by Hall's rental payments.

**Quantum meruit and offset**

By her first point of error, Stahler contends that the evidence established that Hall was liable to Stahler under a quantum meruit theory for either $17,445 or $26,022.[2] By her third point of error, Stahler asserts that the trial court erred by using the yearly lease amount paid by Hall to offset against her inventory losses because Hall "unilaterally converted a for profit business to a nonprofit business."

---

[2] Stahler states in the point of error one in the table of contents and the argument section that she deserves $26,022, but in the issues presented section of the brief states in point one that she deserves $17,445. (Her chart includes $8,577 in non-property claims for cash provided, materials, and services rendered or paid for). In her argument for the gross negligence section (point of error two), she asserts that Hall is responsible for the theft or removal of her property valued at $17,445.

The record does not support Stahler's points of error. Quantum meruit is an equitable remedy that arises independently of an express contract covering goods or services provided. To recover under quantum meruit a claimant must prove that

1) valuable services were rendered or materials furnished

2) for the person sought to be charged

3) which services and materials were accepted by the person sought to be charged, used, and enjoyed by the recipient

4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged.

*Vortt Expl. Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990). The record supports the trial court's implied findings as to Stahler's claims. While Stahler undisputedly worked to set up the store and provided merchandise, the court could have found the evidence insufficient that Stahler provided the services and merchandise *for* Hall or that Hall understood when the services and merchandise were being provided that Stahler expected to be paid by her. Further, the parties' fundamental disagreement over the basic mission of the store and Hall's testimony that she refused to be "bullied" by Stahler undermines the notion that Hall accepted Stahler's services and merchandise. The rupture of the working relationship, locking of Stahler out of the store, and demand that Stahler remove her merchandise all weigh against a conclusion that Hall accepted Stahler's services and merchandise. Finally, to the extent the trial court found that Hall accepted some of Stahler's services and merchandise, the trial court did not have to accept Stahler's valuation of the services and merchandise provided. *See Nelson*, 127 S.W.3d at 174 (factfinder is sole judge of credibility and may reject all or any part of testimony). For example,

9

in her demand letter, Stahler set the value of her goods provided at $20,000. After she removed items over the course of a day with hired movers, she claimed that she was deprived of $17,445 of goods provided. The trial court may have discredited or discounted the value of goods claimed at trial.

To the extent that the services and merchandise provided value that Hall understood and accepted at least partly, the trial court could have found that such value was offset[3] by Hall's services provided and payments made. By her third point of error, Stahler contends that the "trial court erred in using the yearly lease amount of Appellee as an offset of Appellant's inventory as Appellee was the one who unilaterally converted a for profit business to a nonprofit business." The judgment is silent as to whether or to what extent the trial court used Hall's rent obligation and payments to offset Stahler's claimed damages. Further, there is no evidence whether Hall "converted" the business to a non-profit form or if it is merely not (or ever would have been) profitable; regardless, Stahler cites no authority that a change in business form would bar the trial court from offsetting damages.

Nevertheless, we conclude that the record contains legally and factually sufficient evidence to support the judgment if the trial court offset Stahler's damage claims of services and merchandise provided with Hall's services provided and payments made to benefit the joint

---

[3] A recovery of damages by a plaintiff can be offset or reduced by damages to the defendant. *See generally Knight Renovations, LLC v. Thomas*, 525 S.W.3d 446, 454 (Tex. App.—Tyler 2017, no pet.) ("If the plaintiff breached the contract after partially performing it, the plaintiff can recover in quantum meruit for the materials and services provided, offset by the damages to the defendant from the plaintiff's breach." (emphasis added)); *Beeman v. Worrell*, 612 S.W.2d 953, 956 (Tex. Civ. App.—Dallas 1981, no writ) ("We conclude that the trial court properly allowed recovery in quantum meruit for the owner's net benefit after offsetting the owner's damages against the market value of the building." (emphasis added)); *City of Ingleside v. Stewart*, 554 S.W.2d 939, 946 (Tex. Civ. App.—Corpus Christi 1977, writ ref'd n.r.e.) ("[I]n an action on quantum meruit, the cost of correcting any defects may be adjudged as an offset to be deducted from the reasonable value of plaintiff's services and materials.").

business and, thereby, Stahler. Because Stahler cites no legal barrier to Hall claiming offset, we construe Stahler's challenge as being to the legal and factual sufficiency of the evidence to support an offset. The burden of pleading offset and of proving facts necessary to support it are on the party asserting offset. *Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931, 936 (Tex. 1980); *McMillan v. Hearne*, 584 S.W.3d 505, 518 (Tex. App.—Texarkana 2019, no pet.). While the evidence is that Hall did less preparation work in September than Stahler, the record contains evidence she did some work. It is undisputed that Hall alone bound herself to pay one year of $3,000 monthly rent payments on behalf of the business—an obligation not changed when Stahler's participation ended. It is undisputed that Hall paid $7,000 in rent and deposit in August 2021 and that Stahler had put at most $500 into the joint bank account. Stahler provided evidence of the value of her property and services, but the trial court was positioned to assess the credibility of Stahler's valuations. We conclude that some evidence supports a finding that Hall's contributions offset Stahler's contributions that were not recovered—*see Exxon*, 348 S.W.3d at 215 (legal sufficiency)—and that evidence supporting such a finding is not so weak as to make it clearly wrong and manifestly unjust—*see Thrash*, 605 S.W.3d at 230 (factual sufficiency). The record supports the trial court's decision, if any, to find that the value of Stahler's work to Hall and any lost merchandise combined equaled the value of Hall's work plus applicable payments on the lease.

Viewed through both the legal-sufficiency and factual-sufficiency standards and giving proper respect to the trial court's role in assessing credibility, we conclude that sufficient evidence supports the trial court's take-nothing judgment. We overrule points one and three.

11

**Gross negligence**

By point two, Stahler contends that the evidence was "sufficient to find gross negligence short of conversion by failure to safely minimize substantial risk of loss of Appellant's Inventory." The standard for gross negligence has both an objective and a subjective component, requiring an act or omission (A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others. *Marsillo v. Dunnick*, 683 S.W.3d 387, 392-93 (Tex. 2024). Stahler asserts that she lost a "substantial part" of her inventory when Hall[4] "abandon[ed] [the inventory] on the porch of her store for the homeless population to pillage . . . ."[5]

Stahler received a text on October 8, 2021, from Hall's boyfriend that items of hers were on the store's porch, and Stahler testified that the items were gone from the porch when she went to get them that same day. Hall testified, "We do have a population of homeless that actually received help from me, but they also take things from the porch. And a lot of her belongings were on the porch that disappeared." But there is no evidence Hall knew on October 8, 2021, that there was an extreme risk that the items would be removed before Stahler could reclaim them. Legally and factually sufficient evidence support the trial court's conclusion that Stahler take nothing by her gross-negligence claims. We overrule point two.

---

[4] Stahler's brief states that "Appellant"—which is Stahler—abandoned the inventory, but we read that as a typographical error and assume from context that Stahler means to say that Appellee Hall abandoned the property.

[5] By its terms, this claim does not include items that Stahler reclaimed on October 16 or that remained in the store after that reclamation.

12

## CONCLUSION

Having found no reversible error presented, we affirm the judgment.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Smith and Theofanis

Affirmed

Filed:   August 28, 2024